## OERTEL CO. v. GREGORY, DIST. ATTY., et al.

(District Court, W. D. Kentucky. February 10, 1921.)

No. 89.

1. **Constitutional law ☞77—Intoxicating liquors ☞134—National Prohibition Act cannot be extended by regulations.**

National Prohibition Act, tit. 2, § 1, which defines "liquor" and "intoxicating liquor," "provided that the foregoing definition shall not extend to dealcoholized wine nor to any beverage or liquid produced by the process by which beer, ale, porter or wine is produced if it contains less than one-half of 1 per centum of alcohol by volume and is made as prescribed in section 37 of this title and is otherwise denominated than as beer, ale or porter," determines the scope of the act, and a beverage within the proviso is not within the purview of the act and cannot be brought within it by any "regulation" of the Commissioner of Internal Revenue therein authorized.

2. **Constitutional law ☞77—Regulations under National Prohibition Act invalid as beyond authority of executive department.**

A decision or regulation of the Commissioner of Internal Revenue, approved by the Secretary of the Treasury, purporting to be made under authority of the National Prohibition Act, prohibiting the use of the words "Lager Bock or Stout" on labels for cereal beverages otherwise not within the act, *held* unauthorized and not enforceable as an attempt to amend and enlarge the act not within the power of an executive department.

In Equity. Suit by the Oertel Company against W. V. Gregory, District Attorney, and Paul M. Williams, Prohibition Agent. Our motion for injunction and motion to dismiss bill. Injunction granted, and motion to dismiss denied.

J. Verser Conner and T. Scott Mayes, both of Louisville, Ky., for plaintiff.

W. V. Gregory, U. S. Dist. Atty., of Louisville, Ky., for defendants.

WALTER EVANS, District Judge.  [1, 2]  The Eighteenth Amendment to the Constitution of the United States is as follows:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

It was ratified by the requisite number of states in January, 1919, and by its terms became effective one year thereafter.

Titles 2 and 3 of the act passed by both Houses of Congress over the President's objections thereto on October 28, 1919 (41 Stats. 307–322), and which is commonly known as the Volstead Act, had received an elaborate consideration by each House of Congress, inasmuch as it was, largely by anticipation, designed to provide adequate means for the enforcement of that amendment to the Constitution. It is not necessary in the case now before us to go elaborately into the provisions of those titles, and we shall limit ourselves to those of them which bring up the questions involved in this case.

Section 1 of title 2 of the act in its first clause provides:

"When used in title II and title III of this act (1) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids and compounds whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes: Provided, that the foregoing definition shall not extend to dealcoholized wine nor to any beverage or liquid produced by the process by which beer, ale, porter or wine is produced, if it contains less than one-half of 1 per centum of alcohol by volume, and is made as prescribed in section 37 of this title, and is otherwise denominated than as beer, ale, or porter, and is contained and sold in, or from, such sealed and labeled bottles, casks, or containers as the commissioner may by regulation prescribe."

Section 7 of the title reads thus:

"The term 'regulation' shall mean any regulation prescribed by the commissioner with the approval of the Secretary of the Treasury for carrying out the provisions of this Act, and the commissioner is authorized to make such regulations."

Pursuant to the power thus conferred the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, on January 16, 1920, made regulations of the most elaborate character, and which, with the forms prescribed therein, cover 110 closely printed pages.

The bill alleges that the plaintiff is a body corporate engaged in the business or profession of cereal beverage manufacturing and the operation of a dealcoholizing plant for the manufacturing of cereal beverages containing less than one-half of 1 per centum of alcohol in volume, and which said business is and has been operated and conducted under a permit issued by the Commissioner of Internal Revenue under section 37, title 2, of the Act approved October 28, 1919.

In order to clearly understand the exact contention of the plaintiff it may be well to insert at this point certain of the important allegations of the bill as follows:

"Plaintiff states that in pursuance to the permit issued by the Commissioner of Internal Revenue to the Oertel Company as aforesaid, and in pursuance to the provisions of the 'National Prohibition Act,' this plaintiff has been manufacturing in accordance with section 37, title 2 of said act, certain cereal beverages, and is now engaged in the manufacture of said beverages in accordance with said act, and that it now has on hand many thousand gallons of said cereal beverages containing less than one-half of one per cent. of alcohol by volume, and that this plaintiff is now and has at all times herein mentioned, been engaged in the business of selling said cereal beverages to dealers in Louisville, Ky., the vicinity thereof, and other parts of the United States.

"Plaintiff states that on the 16th day of January, 1920, the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, caused to be issued certain regulations relative to the manufacture and sale of said cereal beverages. Subsection C of section 49 of article 6 of Regulations 60, so issued by said Commissioner, reads as follows, to wit:

" '(c) The containers of beverages produced at dealcoholizing plants, distilleries, or industrial alcohol plants, must, before or at the time of removal from the premises where produced, bear a statement either on the commercial label or separate label that the beverage contains less than one-half of 1 per cent. of alcohol by volume: This statement must appear on every bottle or other container of such beverages and where such beverages are transferred to new containers a similar statement must appear on the new containers. Such beverages may not be denominated as beer, ale, or porter.'

"Plaintiff states that in pursuance to said regulations, plaintiff caused a large number of labels to be printed, which said labels described the cereal beverage manufactured and sold by this plaintiff as 'Oertel's Lager Style and Oertel's Double Lager.' A copy of each of said labels is attached hereto as a part hereof, marked 'Exhibits 1 and 2.'

"Said labels in all respects comply with the provisions of said National Prohibition Act, and particularly point out that said beverage contains less than one-half of one per cent. of alcohol by volume.

"Plaintiff states that it has sold many thousand bottles of said beverages, and on each of said bottles one of said labels has appeared; that it has conducted an expensive advertising campaign, advertising said beverage as 'Lager Style' and 'Double Lager,' and that said names 'Lager Style' and 'Double Lager' have become well known to the purchasers of such cereal beverages, by reason of said advertisements, and that said brands constitute a valuable asset of this plaintiff, and have been established by plaintiff at great cost and expense as aforesaid.

"Plaintiff states that on the 26th day of October, 1920, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, issued Treasury Decision 3084, which said treasury decision reads in part as follows:

" 'The use of the words beer, ale, or porter, and the well-known synonyms for same, such as Lager, Bock or Stout, either with or without prefixes or suffixes, is not permissible on labels for cereal beverages.' "

The plaintiff then claims that so much of this last regulation or treasury decision as prohibits the use of "Lager, Bock, or Stout" is in violation of law; that the prohibition of the use of said terms is not authorized by the statute nor any act of Congress; and that, on the contrary, said statute expressly authorizes the manufacture of such cereal beverages containing less than one-half of one per cent. alcohol by volume, and also the sale thereof when and so long as such beverages are denominated otherwise than as "beer, ale, or porter."

The bill further avers that the defendants are the duly authorized officers of the government to prosecute or to bring suits for the violation of the last regulation as well as the others, and that they have publicly threatened and now publicly threaten to enforce the same and especially said Treasury Decision No. 3084, and to prohibit the plaintiff from using the terms "Lager" and "Double Lager," and also threaten to prosecute it for using said terms and to bring numerous civil suits against them in the event they do not discontinue it, and threaten to cause the arrest of plaintiff's officers and salesmen and the confiscation of their property, and that by such threats and action plaintiff will be deprived of its property, its business will be destroyed, its customers will be afraid to deal in the products manufactured by it, and that it will be deprived of its labels and brands and the use of those terms in advertising its products. The bill prays for an injunction against defendants, prohibiting them from doing any of the threatened acts, and accordingly the plaintiff has moved the court to grant it a writ of injunction.

The defendants have moved to dismiss the bill for want of equity, which motion, of course, involves, upon its hearing, an admission that the averments of the bill are true. In this situation an interesting and important question is presented for determination, and in its consideration we shall treat Treasury Decision No. 3084 as a regulation. It was made by the Commissioner of Internal Revenue, was approved by the Secretary of the Treasury on October 26, 1920, and might be more effective as a "regulation" than as a mere "decision."

Title 2, section 1, of the act provides explicitly that the phrase "intoxicating liquors" shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes.

Looking to the act we find that its declared purposes are, first, to forbid the manufacturing, second, the sale, and, third, the transportation of intoxicating liquors for beverage purposes. The liquors referred to were those which were intoxicating, and no others. Manifestly, therefore, nothing came within the purview of these provisions except such fluids as contained an amount of alcohol over one-half of one per cent. in the whole. Otherwise it was not intoxicating, and therefore was not intended to come within any of the provisions of the Volstead Act, nor, indeed, those of the Eighteenth Amendment itself. For the purposes of this hearing, at least, it is admitted by the defendants that plaintiff's products were not intoxicating.

In our efforts to reach a proper conclusion we find much help in the language of Mr. Justice Day, who, when delivering the opinion of the Supreme Court in United States v. Standard Brewery, 251 U. S. at page 217, 40 Sup. Ct. 140, 64 L. Ed. 229, said:

"Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within

the constitutional authority of the legislative body which passed it. Lake County v. Rollins, 130 U. S. 662, 670, 671; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 33; United States v. Bank, 234 U. S. 245, 258; Caminetti v. United States, 242 U. S. 470, 485."

And as bearing closely upon the exact question involved, viz., whether, when the statute as enacted by Congress in the respect now under consideration, includes only the words "beer, ale, or porter," the ancient maxim, "expressio unius est exclusio alterius"—the expression of one thing is the exclusion of another—should not be given much weight in determining whether an executive officer can include other words in making a regulation.

In United States v. Antikamnia Co., 231 U. S. at page 666, 34 Sup. Ct. 222, 58 L. Ed. 419, Ann. Cas. 1915A, 49, in speaking of the functions of the Secretary of the Treasury, the Secretary of Agriculture, and the Secretary of Commerce and Labor, who were empowered by the Food and Drugs Act (34 Stats. 768 [Comp. St. §§ 8717–8728]) to make certain "rules and regulations" for its enforcement, the Supreme Court said:

"It is undoubtedly one of regulation only—an administrative power—not a power to alter or add to the act."

In United States v. George, 228 U. S. 14, 22, 33 Sup. Ct. 412, 415 (57 L. Ed. 712), the Supreme Court said:

"The justification urged for the regulation was that the word 'domestic' meant household. This court rejected the contention and decided that the regulation transcended the power of the Secretary. We said: 'If Rule 7 (the regulation involved) is valid, the Secretary of the Interior has power to abridge or enlarge the statute at will. If he can define one term, he can another. If he can abridge, he can enlarge. Such power is not regulation; it is legislation.'"

And in Waite v. Macy, 246 U. S. 606, 608, 609, 38 Sup. Ct. 395, 396 (62 L. Ed. 892) the court said:

"No doubt it is true that this court cannot displace the judgment of the board in any matter within its jurisdiction, but it is equally true that the board cannot enlarge the powers given to it by statute and cover a usurpation by calling it a decision on purity, quality or fitness for consumption."

The rules for our guidance, as thus clearly established by the Supreme Court, must be followed. We cannot assume any authority or power to disregard them. They require that the language used in the Volstead Act shall not be added to. That language must neither be overlooked, disregarded, nor altered, and especially as it is plain and unambiguous in the provision here under consideration. That act was an industrious and elaborate attempt to meet the entire demand for legislation for the enforcement of the Eighteenth Amendment. We may assume from public information that it was greatly and very fully considered in all its details—as much so possibly as any measure in recent legislative history. We may assume also that all its provisions were carefully worked out and met and expressed the exact intention of the legislative department. We must further assume that the Congress therein used the exact language and indeed all the language it desired to use as manifesting its judgment and its purpose in the premises. No other branch

of the government has the power to add to or change those words, and if any defects in them should be developed in practical efforts to carry the law into full effect, executive officers have no power to supply that lack or amend the defect. The power to amend, as well as the power to enact a statute, rests exclusively in the legislative department.

The phrase "intoxicating liquors" is of supreme importance in the Eighteenth Amendment. Without it nothing else matters. Nevertheless the amendment did not, in terms, undertake to define what should be regarded as "intoxicating liquors." Of necessity, therefore, in prescribing the practical means for enforcing the amendment Congress did define its most important phrase in exact terms in title 2, § 1, of the Volstead Act. In doing this Congress enacted section 1 of title 2 of the Volstead Act, already copied above. In addition section 37 of the same title is of importance, as it, in conjunction with section 1, furnished the basis for that one of the regulations made January 16, 1920, which is as follows:

"(c) The containers of beverages produced at dealcoholizing plants, distilleries, or industrial alcohol plants, must, before or at the time of removal from the premises where produced, bear a statement either on the commercial label or separate label that the beverage contains less than one-half of 1 per cent. of alcohol by volume. This statement must appear on every bottle or other container of such beverages and where such beverages are transferred to new containers a similar statement must appear on the new containers. Such beverages may not be denominated as beer, ale, or porter."

This regulation precisely conformed to the act. Under it plaintiff was granted a formal permit to carry on its business. It thereupon invested large sums therein and had manufactured large quantities of the beverages it describes in the bill, when that regulation called decision No. 3084 was made by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury on October 26, 1920, and which provides that—

"The use of the words beer, ale, or porter, and the well known synonyms for same, such as lager, bock or stout, either with or without prefixes or suffixes, is not permissible on labels for cereal beverages."

The enforcement of this regulation threatened plaintiff with large losses and is what it seeks to enjoin upon the ground that it is not authorized by the Volstead Act, and is therefore beyond the power of the Commissioner.

If Congress had deemed it proper to put into the Volstead or other act the language used in the new regulation, of course no objection could then have been made to it, but Congress did not do so, and in this situation the Commissioner undertook to supply what he must have supposed was a defect in the legislation. If Congress had chosen to add to the words "beer, ale, or porter," the words "or any synonyms for same such as Lager, Bock or Stout," the regulation might have been authorized, but in the absence of those words from the act the rules plainly established by the Supreme Court make it clear that the Commissioner could not, even with the approval of the Secretary of the Treasury or otherwise, add those words to those used by Congress in the legislation it enacted, and the attempt to do so must be held to have

been unauthorized by law, and consequently not enforceable as against the plaintiff in this case. Congress, of course, could, if so desiring, have used those additional words, and, better still, might also have explicitly said what words should be regarded as synonyms, and not have left it to the conjectures of each new Commissioner of Internal Revenue or Secretary of the Treasury, or other executive officers, to enforce their possibly varying views as to what should be regarded as synonymous. This power of final "definition" is not given to the executive officers. United States v. George, 228 U. S. 22, 33 Sup. Ct. 412, 57 L. Ed. 712, supra.

We have, therefore, reached the conclusion that the motion of the defendants to dismiss the bill for want of equity on its face should be overruled, and that the motion of the plaintiff for an injunction against the defendants to the extent indicated in the bill should be sustained.

A decree accordingly may be prepared.