## LEE KWONG NOM et al. v. UNITED STATES.

Circuit Court of Appeals, Second Circuit. July 5, 1927.

### No. 377.

**1. Poisons ⬤⇒9—Evidence held to support conviction of importing and facilitating transportation and concealment of opium (Comp. St. § 8801a; Act Feb. 9, 1909, § 2, subds. [c], [f], as amended [Comp. St. § 8801]).**

Evidence *held* sufficient to support conviction for importing and facilitating the transportation and concealment of opium under Act. Feb. 9, 1909, § 2, subds. (c) and (f) as amended by Act Jan. 17, 1914, Act May 26, 1922, § 1 (Comp. St. § 8801), and Act Jan. 17, 1914, § 3 (Comp. St. § 8801a) where opium was found concealed in coal bin at laundry.

**2. Searches and seizures ⬤⇒3(1)—Officers, smelling fumes of smoking opium coming from laundry, could search without warrant.**

Officers *held* entitled to search laundry for opium without search warrant, after smelling fumes of smoking opium issuing therefrom.

**3. Arrest ⬤⇒63(3), 71—Officers, finding defendants in possession of opium, could arrest offenders and seize instrument of crime.**

Where officers found defendants in possession of opium in laundry, they had right to arrest offenders and seize instrument of crime.

**4. Witnesses** ⬤⟿345(2)—**Witness, testifying to conviction for bribery, held sufficiently impeached without showing length of sentence.**

Where witness in criminal prosecution testified that he had been convicted of bribery and served term in penitentiary, exclusion of testimony as to how long he served *held* not error, since he was sufficiently impeached, and length of imprisonment was immaterial.

In Error to the District Court of the United States for the Eastern District of New York.

Lee Kwong Nom and another were convicted of importing and facilitating the transportation and concealment of opium, and they bring error. Affirmed.

George K. Jack, of Brooklyn, N. Y., for plaintiffs in error.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. [1] The plaintiffs in error were convicted on two counts of an indictment charging a violation of subdivision c, section 2, of the Act of Feb. 9, 1909, c. 100, as amended by Act Jan. 17, 1914, and by Act May 26, 1922, § 1 (Comp. St. § 8801). The first count charged unlawful, willful, and fraudulent importation of two cans of smoking opium, and the second count unlawfully and willfully facilitating the transportation and concealment of the two cans of smoking opium after having imported them into the United States. It was established at the trial that on December 18, 1922, government agents were in the neighborhood of a Chinese laundry at Roslyn, L. I., where the plaintiffs in error were found later with the cans of smoking opium in their possession, and they smelled the fumes of smoking opium coming from the laundry. A name on a sign outside read "Yee Lee." On an affidavit later made by one of the agents, a search warrant was issued by the United States commissioner, authorizing them to search the premises for smoking opium.

On December 20, 1922, the agents returned with the search warrant and proceeded to this Chinese laundry, and after entering it met the plaintiffs in error. The door was closed, but unlocked, and they walked in. There is testimony that one of the officers asked if they had opium on the premises, which the plaintiffs in error denied, and, after exhibiting the search warrant, one of the plaintiffs in error said, "Go and search," whereupon they searched the store, which was partitioned off from the rest of the building. Behind the partition there was a stove and a pile of coal, and in back of this a kitchen. The agents searched the kitchen, and found a box of empty "toys" and a scale. On further search, they found a pipe and a pipe bowl. These were in the kitchen. Thereupon they searched in the pile of coal, and found the two cans of smoking opium. One of the plaintiffs in error said that he had obtained four cans of this smoking opium and paid for it, and that it belonged to the two plaintiffs in error, each having a half interest. The plaintiffs in error worked in the laundry at these premises. It appears that up one flight there was a bed, which may have been used for sleeping quarters. At the trial, objection was made to the receipt of this property seized after such search, because it was contended that the evidence was insufficient of the issuance of and legal sufficiency of the search warrant, and that therefore the seizure was unlawful.

At the time of the issuance of the warrant, the commissioner (who has since died) made a certified copy, which he gave to the agent, and which was preserved and offered in evidence in lieu of the original, which had been lost. The government proved the death of the commissioner and the fact that both the affidavit and original warrant had been lost, and could not be found, although diligent search was made by the clerk of the District Court in the vault kept by the clerk, where such papers are ultimately placed after the death of a United States commissioner. As secondary evidence, the government offered the certified copy of the search warrant and the oral testimony of the government agent, who obtained a certified copy stating the contents of the affidavit upon which the warrant was issued. The agent did not receive a copy of the affidavit.

Section 2, subdivision c, of the act, makes it a crime to fraudulently import any narcotic drug into the United States, or to assist in so doing; also to receive, buy, or sell, or in any manner facilitate the transportation, concealment, or sale, of any such drug after being imported or brought in, knowing the same to have been imported contrary to the law, and section 2, subdivision f, provides that, where a defendant is shown to have had possession of the drug, such possession shall be deemed to be sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury.

And section 3, Act Jan. 17, 1914 (Comp. St. § 8801a) provides that, after July 1, 1913, all smoking opium or opium prepared for smoking, found within the United States, shall be presumed to have been imported after the 1st day of April, 1909, and the burden of proof is on the accused to rebut such presumption. The evidence sufficiently established guilt on both counts.

[2] We need not consider the argument presented by the plaintiffs in error that their constitutional rights were violated, because the search warrant was insufficient, and the affidavit upon which it was granted was insufficient, nor need we consider the further argument that the loss of the search warrant and the affidavit was not sufficiently established to permit secondary evidence as proof thereof, for we think the agents could lawfully search the premises without a warrant.

The premises, which was used as a laundry, was a store open to the public. It was partitioned off, about 50 feet long, and it was behind this partition that the pile of coal was stored, with a kitchen in back. No protest was made by the plaintiffs in error when the agents came in to search, and, indeed, the officers were told to "go and search." The property which was taken was found downstairs. It is true that they searched the room upstairs, where there was a bed; but nothing was taken from this room. The door leading into the laundry was closed, but not locked, and they walked in, as might any customer of the laundry. The fact that the room upstairs may have been used for sleeping purposes is immaterial, since the downstairs portion was used for business purposes. Steele v. U. S. (No. 1) 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757. The two cans of smoking opium were found in the coal pile. The other articles referred to were found in the kitchen, which adjoins the store. In Dillon v. United States (C. C. A.) 279 F. 639, government agents entered a hotel and went into the bar, a public place, where they found men drinking, and then made search of adjoining premises, and found intoxicating liquors in an icehouse connected with the hotel. This court sustained the right of the government agents to enter the public bar of the hotel and seize the whisky being sold there.

[3] A crime was being committed in having the opium in their possession when the officers visited the laundry. Since they detected the plaintiffs in error in the commission of the crime, they had a right to arrest the offenders and seize the instrument of the crime. McBride v. United States (C. C. A.) 284 F. 416; Vachina v. United States (C. C. A.) 283 F.

35; Wiggins v. United States (C. C. A.) 272 F. 41. Federal agents may lawfully enter a house where they smell raisins in the process of cooking, and the cellar, where they found a still, liquor, and paraphernalia used in the manufacture of liquor, and seize such property. United States v. Borkowski (D. C.) 268 F. 408. In that case, the sense of smell which made possible the detection was pointed out to be as important as the sense of sight, which might see the crime being committed. In Rouda v. United States (C. C. A.) 10 F.(2d) 916, prohibition agents saw a man enter the ground floor of a building with two 5-gallon cans of alcohol. The ground floor was occupied as a hosiery store, and the agents followed the man into the basement, and there found the defendants engaged in the manufacture of whisky. The agents there entered an inclosure where the men were working, and arrested the defendants, and later secured a search warrant to search for property. We pointed out that, where manufacturing was taking place in the presence of the agent, he might lawfully enter a public store and search the premises and seize the property.

In Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, the court said: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See Carroll v. United States, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Weeks v. United States, 232 U. S. 383, 392," 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

We conclude, therefore, that the officers lawfully entered the premises of the plaintiffs in error, and, having lawfully entered, could search for and seize the property of the plaintiffs in error found there. It was unnecessary for them to obtain a search warrant before doing what they did.

[4] Error is assigned in the ruling excluding a question asked the witness Ranalli. He testified that he had been convicted of bribery and served a term in Sing Sing prison. He was then asked, "How long did you serve?" The answer was excluded on objection. The length of his imprisonment was immaterial; he was sufficiently impeached, and his credibility attacked, by the question and answer which brought forth the admission of his conviction.

We find no error in the record which requires further consideration. Judgment of conviction affirmed.