**In re PHŒNIX CEREAL BEVERAGE CO., Inc.**

No. 331.

Circuit Court of Appeals, Second Circuit.

May 23, 1932.

L. HAND, Circuit Judge, dissenting.

George Z. Medalie, U. S. Atty., of New York City (Ulysses S. Grant and Arthur H. Schwartz, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Louis Halle and Sanford H. Cohen, both of New York City (Milton R. Kroopf and George Cohen, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The property directed to be returned by the order appealed from was seized by agents of the Department of Justice on a search warrant obtained to search the premises Nos. 441–453 West Twenty-Fifth street, and buildings in the rear thereof, and Nos. 262–266 Tenth avenue, in the city of New York. The search warrant was issued on affidavits of Messrs. Keating and Kelley, both agents of the Department of Justice. The affidavits stated in substance that on July 18, 1931, early in the morning, Keating was in the vicinity of the premises and detected an odor coming therefrom which he said was similar to that given off by brewing mash when used in the manufacture of beer. This he noticed for two hours. He saw steam coming from the premises; also a man working around machinery on the Tenth avenue side of the building. Some men in the vicinity, he said, looked him over very carefully, and he assumed that they were lookouts for the operators of what he concluded to be a brewery. The next day he, with Kelley, kept the premises under observation and again detected the odor of brew coming therefrom. He saw three men whom he again suspected of being lookouts. On the third day he again saw steam coming from the premises. He had been informed by other agents that they had been in the premises about a month before and that they saw machinery suitable for use in brewing beer. An examination was made by him of the Prohibition Administrator's files, and there he learned that for several years before this brewery had manufactured cereal beverage under a government permit.[1] The permit, however, had expired, and, if the plant was operating on the day in question, it was doing so without such authorization. Concededly these were the premises of the appellee; its sign was exhibited on the side of the building. The permit, granted previously, described these premises. It is admitted that machinery in the plant was in open operation and visible from the street; there was no secrecy concerning it. Kelley in his affidavit states that he saw a covered truck

[1] Under the Eighteenth Amendment, the Prohibition Act alone curtails the manufacture or production of liquids or products which at no time reach a prohibited alcoholic content. It is only where there is used in the process of manufacturing and developing more than one-half of 1 per cent. of alcohol that a permit is required. Section 37, title 2, of the National Prohibition Act (27 USCA § 58); Campbell v. Galeno, 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063; Oertel v. Gregory (D. C.) 270 F. 789.

leave the premises at 11:05 a. m. on July 20th and proceed to a gasoline station where he had an opportunity to observe it closely. On it was a sign reading, "Lincoln Motor Haulage, 419 E. 67 Street." Through a small opening of about three inches he saw a beer barrel standing on end. He did not see the label nor did he know the contents of the barrel. Moreover, he said he saw several other trucks enter the premises between 11:50 a. m. and 12:35 p. m. on that day.

The warrant authorized a search of the premises and seizure of any intoxicating liquors and apparatus designed for the manufacture of intoxicating liquor. There was no characterization or description in the affidavit of the kind of machinery seen in the brewery; there is no statement of an attempt to look in upon and ascertain what was loaded in the covered truck, Kelley being content with a view through a slit three inches long in the cover, while standing some distance away; nor is there any evidence of a smell or odor that might have come from the contents of the truck. It is incredible to think that he saw more than one barrel, although in his affidavit he said he saw barrels stacked on end in the truck. It is not disputed that the brewery was at one time lawfully operated, and the mash, which is claimed to have been smelled by these agents, is conceded not to have any different odor than that of a lawful beverage, such as might emanate from malt syrup or some other ordinary malt tonic. The record shows that the mash did not contain alcohol.

At the time of the search and seizure, as the agents later testified, the beverage which was apparently stored or manufactured in the premises was dumped in the sewer in large quantities, and one of the agents recaptured some of it in a milk bottle, tasted it, and said that it was beer. Later it was found that it contained more than the lawful alcoholic content.

On the application by the appellee to vacate the search warrant, the commissioner pointed out that the principal facts alleged showed that the agent Keating smelled the odor of mash when in the process of brewing beer; that he observed steam coming from the premises and from time to time saw lights and engines running in the building and a man walking around the same, whom he judged to be a lookout; that the premises had been used as a brewery; and concluded that it was now being used without a permit to manufacture beer. On the evidence taken before him, the commissioner found that the mash usually used in the manufacture of beer

is nonalcoholic and from it are manufactured various lawful products; that, in the absence of proof, therefore, that this mash was fermenting, or that it was actually intended for use in manufacturing beer, the conclusion that it was so intended must be disregarded. He said: "It thus appears that taken singly or collectively, there were no facts before me upon which the search warrant should have issued on the date on which it so issued, and the motion to vacate must therefore be granted."

The District Judge reviewing the action of the commissioner stated: "As far as I can see, these gentlemen smelled a peculiar odor, saw some men loafing in the neighborhood, saw a wagon drive away with a hole in the rear of it, through which they saw a beer barrel; they saw steam arising from a manufacturing plant. It doesn't seem to me that is probable cause for the issuance of a search warrant, and I see no reason to disturb the ruling of the Commissioner."

He thereupon overruled the government's motion and affirmed the vacation of the search warrant by the commissioner. All the property seized was returned to the appellee after this action in the court below.

There was a full hearing before the District Court with ample opportunity to give facts to justify the claim of probable cause for the issuance of the warrant. No hard and fast rule prevails as to determining the existence of probable cause upon which to grant a search warrant.

In Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 549, 69 L. Ed. 1032, the court said: "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

In Taylor v. United States, 52 S. Ct. 466, 467, 76 L. Ed. ——, decided by the Supreme Court May 2, 1932, the facts were as stated in the opinion, that in the nighttime "a squad (six or more) of prohibition agents while returning to Baltimore city discussed premises 5100 Curtis avenue, of which there had been complaints 'over a period of about a year.' Having decided to investigate they went at once to the garage at that address, arriving there about 2:30 a. m. The garage—a small metal building—is on the corner of a city lot and adjacent to the dwelling in which petitioner Taylor resided. The two houses are parts of the same premises. As the agents approached the garage, they got the odor of whisky coming from within. Aided by a searchlight, they looked through a small opening and saw many cardboard cases which they thought probably contained jars of liquor. Thereupon they broke the fastening upon a door, entered, and found 122 cases of whisky. No one was within the place, and there was no reason to think otherwise. While the search progressed, Taylor came from his house and was put under arrest. The search and seizure were undertaken with the hope of securing evidence upon which to indict and convict him."

A considerable number of complaints had been made against the premises, and the agents had not obtained a search warrant. The court said: "We think, in any view, the action of the agents was inexcusable and the seizure unreasonable. The evidence was obtained unlawfully and should have been suppressed. See Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; United States v. Lefkowitz and Paris, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. ——, decided April 11, 1932, and cases there cited. Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crimes; but its presence alone does not strip the owner of a building of constitutional guaranties ° * ° against unreasonable search."

 The Fourth Amendment prohibits unreasonable searches, and a search warrant does not make a search reasonable nor does the lack of one make it unreasonable. But, if the facts are insufficient to justify a search, a search warrant will not aid the officers. Insufficient facts contained in the affidavits do not make a search warrant valid. Under the circumstances of the Taylor Case, if the facts indicated probable cause, it would not have been necessary to obtain a search warrant. The search and seizure in that case were found to be unreasonable. The rule as applied there has similar application to the facts in the instant case. Here there is evidence which justifies the claim that the odor testified to by the agents was similar to the odor that would emanate from products permitted to be manufactured even without a permit and containing no alcohol whatsoever. Indeed, one agent testified that the odor he

discerned was not that of alcohol. The affidavits did not disclose the presence of prohibited beer or beverages upon the premises sought to be searched and no agent gave testimony in his affidavit which revealed the presence of intoxicating liquor. The conclusion was reached only from the facts as above stated, which do not justify a conclusion of guilty use of the premises rather than an innocent use which was permissible under the law. Nothing in the affidavits showed the possession or manufacture of liquor containing more than one-half of 1 per cent. of alcohol. As said in the Taylor Case, prohibition officers "may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties * * * against unreasonable search." The conclusion reached by the commissioner and the District Court, after full investigation and consideration by both, ought not to be disturbed unless this court can say that the action was without any support. The presence of steam coming from the building indicated nothing to justify an inference that beer was being manufactured; appellee may have been engaged in a lawful pursuit in manufacturing. The presence and use of machinery was consistent with innocence. No guilty use was shown in the affidavits to have been made of the machinery. It was lawfully there, and had been used lawfully in the past. The recital by Kelley, in his affidavit, of what he saw in the truck, is inconsequential. Looking through an opening about three inches in diameter, while he stood four feet away from the closed truck, he could not have seen more than one barrel, and the contents of that barrel are not disclosed. He perceived no odor coming from the truck. There was no justification for the issuance of the search warrant on the facts stated in these affidavits.

■ Constitutional protection extends beyond the home, and this plant is protected against unlawful searches and seizures as is any other business place. United States v. Lefkowitz, 52 S. Ct. 420, 76 L. Ed. —, decided April 11, 1932; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Temperani v. United States, 299 F. 365 (C. C. A. 9).

■■ It is contended by the appellant that the search was lawful even though the warrant be deemed illegal. The basis of this contention is that, when the agents arrived at the brewery to execute the warrant, beer was dumped out of the building into the street. But the occasion of the agents' visit and their purpose was to execute the search warrant, not to make an arrest. The facts did not justify a search without a warrant. Taylor v. United States, supra. To justify a search as an incident to arrest, it must appear that the crime was being committed in the presence of the officers and that they had probable cause to believe that such was being committed. In Raniele v. United States, 34 F. (2d) 877, 880 (C. C. A. 8), the agents approached a house without a warrant and smelled the odor of mash. One entered, spoke to a woman who told them that her husband was in the cellar; he went down and found the defendant with four other men and two stills in operation. Defendant was arrested and the stills destroyed. Reversing a conviction for possessing an unregistered still, the court said that the smell of mash did not give the agent knowledge that any person was in the house, and, if he had entered and found no one there but had seized the stills, and on the next day found the owner in town and arrested him, the search and seizure would have been declared unlawful. The court said: "The fact that the prohibition agent happened to find the owner in the house does not alter the case. After-acquired knowledge could not legalize a search unlawful when made."

As in the Raniele Case, there was here no knowledge shown on the part of the officers that when they came to execute the search warrant they knew persons were in the building and that they came to arrest rather than to search. The fact that when they did arrive some one caused beer to flow into the street is like the work and operation about a still in the Raniele Case.

■ The courts have made a distinction between public places where people may come and go freely and those to which neither the public nor government agents have access. In the former case, the agents, being lawfully in, can arrest and seize for crimes being committed in their presence. Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; Dillon v. United States, 279 F. 639 (C. C. A. 2). In Lee Kwong Nom v. United States, 20 F.(2d) 470, 472 (C. C. A. 2), an entry was made by government agents into a laundry, and the owner invited a search. This was held not to be illegal. We said: "The door leading into the laundry was closed, but not locked, and they [agents] walked in, as might any customer of the laundry."

Being lawfully in, they could arrest for crimes committed in their presence, and search the premises as an incident thereto. But, where the entry is made on private prop-

erty, there must be a justification. The government may not justify a seizure under the invalid warrant when the property was obtained under and by virtue of such a warrant, and the court will not inquire as to what would have happened if the agents had proceeded without a warrant. Murby v. United States, 293 F. 849 (C. C. A. 1); Salata v. United States, 286 F. 125 (C. C. A. 6).

Below the appellant sought to interpose affidavits by the agents who made the seizure which set forth alleged observations made by them as they were entering the premises. The court properly declined to accept these, stating that their contents could not affect the issue of the validity of the warrant. A detailed return on the search warrant had been filed and certified as to the seizure of the property under the warrant. The government resisted the return of the property, basing the right so to do upon the sufficiency of the search warrant and the possession obtained by its execution. After losing before the commissioner, we think it was then too late for the government to abandon the claim of sufficiency of the search warrant and attempt to sustain the search and seizure upon the information obtained at the time of the execution of the warrant. A search warrant can only be issued upon information obtained prior to its issuance. Its validity must rest upon the affidavits made at that time. Moreover, it appears that the agent Keating entered the building to execute the search warrant independently of the knowledge of the beer said to have been poured into the street.

It is contended that the entry was lawful and permissible under the Revised Statutes sections 3152 and 3177 (26 USCA § 92). There is no force in this argument. Cooper v. United States, 299 F. 483 (C. C. A. 3). Nor had the agents justification for the seizure because of an alleged possible tax upon beer. There is no tax involved in these circumstances. United States v. Amer. Brewing Co. (D. C.) 296 F. 772.

The merchandise, machinery, books, and papers were ordered returned. If the search and seizure was illegal, as we hold, it was properly ordered returned. Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374. A libel was filed by the government, and a monition made returnable September 22, 1931, seeking condemnation of the property seized, and it is said that the court below improperly ordered a return of the property in view of this proceeding. If the property was illegally seized and ordered returned, the filing of the libel

could not remove the res from one court to another. The remedy of the appellee could not be defeated by such procedure. Upon the filing of the libel, the res, being vested in the person of an officer of the court, became unquestionably subject to the orders of the court. The appellant had no greater right or title to the res than that which was obtained by the court appealed to for the return of the seized property. When the seizure under the search warrant failed, the right to hold the seized property also failed. The filing of a forfeiture libel conferred no right on the government greater than it had acquired under the search warrant. United States v. Specified Quantities of Liquors, 7 F.(2d) 835 (C. C. A. 2); United States v. Lot of Wine (D. C.) 31 F.(2d) 495; Cost v. United States, 27 F.(2d) 511 (C. C. A. 3).

There was want of probable cause for issuing the search warrant, and the property was legally possessed by the appellee. The order vacating the search warrant and directing the restoration of the property to its owners was properly entered.

Order affirmed.

L. HAND, Circuit Judge (dissenting).

The facts contained in the affidavits used to obtain the search warrant were perhaps not enough to justify its issuance; if the case turned upon them alone I should be in some doubt, after Taylor v. U. S., 285 U. S. ——, 52 S. Ct. 466, 76 L. Ed. ——, though even then I am not clear that they did not give reasonable ground for supposing that illicit beer was being made on the premises. Quandt v. U. S., 47 F.(2d) 199 (C. C. A. 2). But this seems to me beside the point. When the officers came to the premises with their search warrant, they found the gutter of the street awash with what looked like beer, flowing out of a pipe which apparently led from the brewery, for brewery it plainly was, whether innocent or not. They had not then entered, or taken any other action which required the justification of a search warrant. One of them tasted some of the outflow and thought it beer, but on that I do not rely. It seems to me enough that the brewery was in operation and that somebody within was obviously spilling the beer. Possibly it was theoretically conceivable that this might have been for some innocent reason; the brew might have spoiled and was being thrown away. That, however, appears to me an excessively strained interpretation to put upon what they saw; it was reasonably certain that those inside were disposing of the beer because it was unlawful; the moment selected

for this unusual proceeding fitted too aptly with the inference that they had learned of the proposed raid. This was all set out in affidavits which the judge refused to receive, and it should have left no doubt in the officers' minds that they had interrupted an illicit brewery in course of operation, and that the operators were in the act of disposing of the incriminating beverage. The conclusion was indeed more than reasonable, it was inevitable, that a felony (section 91, title 27, U. S. C. [27 USCA § 91]), was in course of commission, or at best just ending, before their eyes.

In Rouda v. U. S., 10 F. (2d) 916, we held that prohibition officers had larger powers of arrest than peace officers; here we need only say that they had as large. That much has without discussion been repeatedly assumed. Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Gerk v. U. S., 33 F. (2d) 485 (C. C. A. 8); Elrod v. Moss, 278 F. 123 (C. C. A. 4); McBride v. U. S., 284 F. 416 (C. C. A. 5); United States v. Peterson, 268 F. 864 (D. C.). The right to arrest when a felony is committed in an officer's presence is too well established for debate (Bishop Crim. Proc. § 183); to effect the arrest he may break and enter any premises not a dwelling (op. cit. §§ 194, 197). It seems to me that in the case at bar the manufacture of beer was taking place in the officers' "presence." The brewery was visibly in operation; they saw its product being turned out. True, the walls of the building prevented their seeing the actual brewing, but that I conceive is not final. Thus in Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409, they looked through the window and saw a sale; they were scarcely "present" at it, if they must be in the room. The word is used more loosely than that; it includes, I think, any acts which are manifested to the officer's senses, though he be separated from the offender by a wall or other partition. Certainly it cannot be that if he be in one room, and hears or sees an assault being committed in the next, it is not committed in his "presence." Garske v. U. S., 1 F. (2d) 620 (C. C. A. 8); Wida v. U. S., 52 F. (2d) 424 (C. C. A. 8). Thus I think that aside from any warrant the officers had power to enter and arrest the offenders. When once in, they might seize the contraband which they found; in this they were not confined to what was on the person of the offender, as in the case of evidence. For example, though the warrant do not specify all the liquors seized, they may be taken

if the entry is lawful [Steele v. U. S. No. 1, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757; Marron v. U. S., 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; United States v. Old Dominion Warehouse, 10 F. (2d) 736 (C. C. A. 2)]; and the same is true if there be no warrant at all (Agnello v U. S., 269 U. S. 20, 30, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. Cf. Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790). As I have just suggested, seizures of evidence as such are much more circumscribed [Lefkowitz v. U. S., 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. ——; U. S. v. Kirschenblatt, 16 F. (2d) 202, 51 A. L. R. 416 (C. C. A. 2)]; here none would have been within the power of the officers, except so far as it was on the person of the offender, or perhaps close beside him. Again, they might not have seized a mass of contraband and lawful property and picked it over at their leisure. [United States v. 1013 Crates, 52 F. (2d) 49 (C. C. A. 2)]. This they did not do; rather they selected only that which they found to be confiscable, taking their time to do so. But these chattels were not property at all, strictly speaking (section 25, tit. 2 National Prohibition Law [27 USCA § 39]), though access to them must indeed be lawfully gained, and their possessors were free from violent invasion of the curtilage where they had placed them. Their privilege ended there; it did not protect them from the consequences of the crime which had outlawed them; the contraband could itself be seized, whenever it could be lawfully got at.

Nor can I understand why the possession of the search warrant, even if it was invalid, should have stripped the officers of powers which they had without it. We ruled the opposite in U. S. v. Gowen, 40 F. (2d) 593, and though our decision was reversed in Go-Bart v. U. S., 282 U. S. 344, 356, 51 S. Ct. 153, 158, 75 L. Ed. 374, this much was assumed to be correct. The same thing was squarely decided in Billingsley v. U. S., 16 F. (2d) 754 (C. C. A. 8), and by implication in Stallings v. Splain, 253 U. S. 339, 342, 40 S. Ct. 537, 64 L. Ed. 940; Marron v. U. S., 275 U. S. 192, 198, 199, 48 S. Ct. 74, 72 L. Ed. 231; Vachina v. U. S., 283 F. 35 (C. C. A. 9); and Fryar v. U. S., 3 F. (2d) 598 (C. C. A. 6). In Murby v. U. S., 293 F. 849 (C. C. A. 1), the First Circuit did indeed refuse to consider whether there was other justification for the search than the warrant, though it does not appear that there was any. So far as the decision is to be taken as a ruling it is contrary, I think, to both principal and au-

thority. I do not see that Salata v. U. S., 286 F. 125 (C. C. A. 6), touches the question at all.

As I view the case it is not therefore necessary to decide whether the United States could adopt the seizure even if it was unlawful, and I pass that point, except to reserve it. As I have said, the case at bar involves no evidence as such, but only the return of contraband property, against which a libel of information is now pending, which must fall with the return of the property.