**UNITED STATES v. ONE 1949 MODEL FORD COACH AUTOMOBILE, MOTOR NO. 98BA–876874.**

**No. C. A. 1173.**

United States District Court .
W. D. South Carolina, Rock Hill Division.

Dec. 10, 1951.

John C. Williams, U. S. Atty., W. A. Bull, Asst. U. S. Atty., Greenville, S. C., for plaintiff.

Walter H. Hood, Anderson, S. C., W. Clarkson McDow, Rock Hill, S. C., for claimant, Thelma Roach.

WYCHE, Chief Judge.

In this case, the Government in its libel of information filed June 5, 1951, alleges: "That on or about May 11, 1951, investigators of the Alcohol Tax Unit, Internal Revenue Service, Treasury Department, District Number Six, did legally seize on land in York County, South Carolina, within the Western Judicial District of South Carolina, a 1949 Model Ford Automobile, Motor Number 98BA–876874, of the appraised value of One Thousand Dollars which automobile was then and there used on April 15, 1951, and on divers occasions prior thereto between November 1, 1950, and May 11, 1951, in violation of the Internal Revenue Laws of the United States in that the special tax imposed on retail liquor dealers had not been paid." Thereafter, in due time Thelma Roach intervened as claimant of the above described vehicle and alleged that she now is and was on May 11, 1951, the owner of the above described automobile and also denied that such seizure was legal. The issues raised before me are as follows: (1) Was the above described automobile the property of the claimant Thelma Roach on May 11, 1951? (2) Was the automobile above described used on April 15, 1951, in violation of the Internal Revenue Laws of the United States as alleged in the libel of information? (3) Was the automobile legally seized on May 11, 1951, as alleged in the libel of information and if not, is the alleged seizure valid?

The testimony before me may be briefly summarized as follows: The claimant Thelma Roach testified that in July, 1950, the Government seized an automobile belonging to her; that during the latter part of 1950 she sent her brother-in-law, Lannie Lofdahl, to a second-hand dealer to purchase an automobile for her and he selected the subject automobile; that she handed him the amount of the down-payment and

he purchased the car for her in his name, gave his mortgage to a finance company in Chester, South Carolina; that it was registered in his name and turned over to her, and she has made all payments on the automobile to the finance company, even after its seizure. She gave as her reason for purchasing the car in the name of Lofdahl, that she, having had an automobile seized in July, 1950, for violation of the liquor laws, felt sure that no finance company would accept her mortgage. She further testified that the automobile was her property, that she made all the payments and Lofdahl never has had any interest in the automobile whatsoever; that it was then, and now is, her property. The testimony further shows that on or about Sunday, April 15, 1951, Fred Wolfe, Chief of Detectives for the City of Rock Hill, filled out a search warrant which the City Recorder had previously signed in blank and went to claimant's place of business known as "Dixie Tavern" just inside the City limits of Rock Hill where he found fifteen pints of tax-paid whiskey in the automobile. On Monday, April 16, 1951, the claimant forfeited her bond of $100 in Recorder's Court of Rock Hill. Mr. Coates of the Alcohol Tax Unit was in Recorder's Court that day and took cognizance of the forfeiture and thereafter on or about the 19th or 20th day of April went to claimant and told her to buy a license within the calendar month. She testified that he told her to buy it in a month, which she understood to be within thirty days. She further testified that she went by the Deputy Collector of Internal Revenue's Office on one or two occasions during the calendar month to buy the license but found no one in, however she did later buy such a license for the months of April, May and June, 1951. The testimony shows that on or about April 28, 1951, the City of Rock Hill sent an under-cover man to claimant's place of business who bought some tax-paid whiskey from a curb boy with two marked one dollar bills, and that the bills were found in claimant's cash drawer; that a search of the place was made and some tax-paid whiskey was found in an outhouse on the premises, but this purchase and find-

ing of whiskey had no connection with the automobile.

There was apparently a very close relationship and cooperation between the City Police of Rock Hill and the Federal Alcohol Tax Unit. The testimony shows that although the Alcohol Tax Unit was provided with offices in the Federal Building in Rock Hill, they made their headquarters at the City Police Station and the City Police took telephone messages and calls for the Federal Agents. It further appears that agent Coates was a more or less regular attendant upon Recorder's Court in Rock Hill.

The testimony further shows that on May 11, 1951, Mr. Coates and Mr. Mooney of the Alcohol Tax Unit went to the "Dixie Tavern", without a warrant, or other legal process, and demanded that claimant turn the automobile in question over to them, and when claimant questioned their authority to take her property and asked to see a warrant, one of the agents told her that they did not need a warrant. Claimant further told them that the automobile was the property of her brother-in-law and that they would have to get his permission to take it. They then told her that unless she turned the key over to them that they would call a wrecker and pull it in, whereupon she turned the keys over to them. I, therefore, make the following

### Findings of Fact.

1. The automobile in question was on May 11, 1951, and now is, the property of the claimant Thelma Roach.

2. The automobile in question was on April 15, 1951, used in violation of the Internal Revenue laws of the United States, as alleged in the Government's libel of information.

3. Claimant's car was seized on May 11, 1951, by two armed investigators of the Federal Alcohol Tax Unit without a warrant of seizure, over the protest of claimant and upon the basis of information of its illegal use known to them since April 16, 1951, and the seizure was made in the City of Rock Hill, South Carolina, where

there was an available United States Commissioner.

4. At the time of its seizure the automobile was located at claimant's place of business and a search of it disclosed no evidence of past, present or intended illegal use.

5. There was no evidence that claimant had, or was attempting to secrete the car, or otherwise put it beyond reach of lawful seizure.

■ The Government in apparent recognition that a forfeiture can be based only upon a lawful seizure by federal officers, alleged in the second paragraph of its libel of information, filed June 5, 1951: "That on or about May 11, 1951, Investigators of the Alcohol Tax Unit, Internal Revenue Service, Treasury Department, District Number Six, did *legally* seize on land in York County, South Carolina, etc." This allegation, denied by claimant's answer, is entirely inconsistent with the position taken by it on oral argument on claimant's motion to dismiss. Having assumed such burden by its pleading, the Government should be required to discharge the burden by its proof.

The Government seeks an adjudication of forfeiture under 26 U.S.C.A. § 3116, which expressly provides for the issuance of a warrant of seizure of property.

The Government contends here, as it unsuccessfully did in United States v. Plymouth Coupe, 3 Cir., 1950, 182 F.2d 180, 182, that the fact that the Government's possession is founded upon an unlawful seizure is immaterial. That Court, reversing the judgment of the District Court and remanding with instructions to dismiss the libel, assigned three reasons for so doing. The first was that it had previously so held. "Second, we think the rule fits in with the well established line of cases which requires the exclusion of evidence unlawfully obtained. That rule has, as is well known, been subject to criticism and there is a split of opinion on it in state courts, but it is a clearly established federal rule. And finally, we see no reason why officers of the law should be encouraged in making

so brazen and unwarranted a seizure of a citizen's property as the one made here. There was not the slightest emergency; there was no reason why the seizure, if it was to be made, should not have been made following the issuance of a warrant in regular fashion." So far as I have been able to determine, the Government has not sought a review of this case by the Supreme Court.

■ In Dodge v. United States, 1926, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392, municipal police officers seized a motor boat transporting contraband liquors on navigable waters. The Government adopted the seizure and the boat was held subject to seizure. This case is not applicable to the present unlawful seizure by federal officers. The Fourth Amendment applies only to the Federal Government.

In the later case of Maul v. United States, 1927, 274 U.S. 501, 47 S.Ct. 735, 739, 71 L.Ed. 1171, the Supreme Court in the concluding paragraph of its opinion stated: "It follows that the seizure in this instance by the officers of the Coast Guard was lawful and therefore that the exception to the District Court's jurisdiction was ill grounded. *Whether if the seizure—made by federal officers—were unlawful the ruling in* Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392, *would apply need not be considered.*" (Italics added.)

■ In Cook v. United States, 1933, 288 U.S. 102, at pages 121, 122, 53 S.Ct. 305, 312, 77 L.Ed. 641, the Supreme Court stated: "To hold that adjudication may follow a wrongful seizure would go far to nullify the purpose and effect of the Treaty." (The Treaty between the United States and Great Britain). To paraphrase this language: To hold that adjudication may follow a wrongful seizure by federal officers would go far to nullify the purpose and effect of the Fourth Amendment to the United States Constitution.

The foregoing Supreme Court cases were considered by the Court of Appeals for the Third Circuit in United States v. Plymouth Coupe, supra, 182 F.2d 180, in the following language: "In no case which we have found

has the Supreme Court expressly dealt with the effect in forfeiture proceedings of unlawful seizure by federal officers. The District Court relied upon language to the effect that in forfeiture proceedings the United States may adopt an unlawful seizure and enforce its claim as though the seizure had been duly authorized. Such language was most recently used in a forfeiture case in Dodge v. United States, 1926, 272 U.S. 530, 532, 47 S.Ct. 191, 71 L.Ed. 392. But there the unlawful seizure was by state officers. And in Maul v. United States, 1927, 274 U.S. 501, 512, 47 S.Ct. 735, 71 L.Ed. 1171, the question of the effect of an unlawful seizure by federal officers was specifically left open.

"The rule we enunciated in the Daeufer-Lieberman case, supra, [Daeufer-Lieberman Brewing Co. v. U. S., 3 Cir., 8 F.2d 1] finds support in Cook v. United States, 1933, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641, where the United States Coast Guard, in violation of a treaty, seized a British rum-runner. The libel was dismissed and the Dodge Case, supra, distinguished: 'The doctrine (of the Dodge case) is not applicable here. The objection to the seizure is not that it was wrongful merely because made by one upon whom the Government had not conferred authority to seize at the place where the seizure was made. The objection is that the government itself lacked power to seize, since by the Treaty it had imposed a territorial limitation upon its own authority.' 288 U.S. at page 121, 53 S.Ct. at page 312 [77 L.Ed. 641]."

The Government relies upon United States v. Eight Boxes, etc., 2 Cir., 1939, 105 F.2d 896, 899. The Court in that case admittedly overruled its earlier decision to reach its holding. "Our decision in Re Phoenix Cereal Beverage Co., 2 Cir., 58 F.2d 953, seems to contradict our present views as well as those expressed in The Underwriter, supra [2 Cir., 13 F.2d 433]. We think it should be overruled in so far as it holds that a search illegal under the Fourth Amendment prevents the court from acquiring jurisdiction upon the filing of a libel for forfeiture."

### Conclusions of Law.

1. Forfeitures are not favored, they should be enforced only when within both the letter and the spirit of the law. United States v. One 1936 Model Ford Coach, 307 U.S. 219, at page 226, 59 S.Ct. 861, 83 L. Ed. 1249.

2. The libel of information having alleged that the automobile was legally seized, it was necessary to prove that the seizure was legal.

3. The automobile was illegally seized.

4. The claimant is entitled to have the automobile returned to her without cost to her.

### Order

It is, therefore Ordered, Adjudged and Decreed, That the libel be and it hereby is dismissed; and

It is further Ordered, That the said automobile be returned to claimant without cost to her.