### BRADY et al. v. UNITED STATES. *

(Circuit Court of Appeals, Sixth Circuit. July 5, 1924.)

No. 3990.

1. **Criminal law ⬅⬆395—Papers obtained in violation of constitutional rights cannot be used in evidence.**

Papers and property obtained from a defendant in violation of his constitutional rights under Fourth Amendment cannot be used in evidence against him, if application for their return is seasonably made.

2. **Arrest ⬅⬆71—Right to search and seize incident to lawful arrest.**

The right to search and seize, for purpose of discovering fruits, instruments, or evidence of crime, is incident to a lawful arrest.

3. **Arrest ⬅⬆63(4)—Evidence held to justify arrest for violating Prohibition Act.**

Evidence *held* to justify arresting defendants without warrant, either on ground that felony had been committed by unlawfully taking whisky from bonded distillery, or on ground of conspiracy to unlawfully transport whisky.

4. **Arrest ⬅⬆64—Private person may arrest one reasonably suspected of committing felony.**

A private person may arrest one reasonably suspected of having committed a felony, and under Rev. St. § 3268 (Comp. St. § 6006), taking whisky from a bonded distillery is a felony, and under Criminal Code, § 37 (Comp. St. § 10201), a conspiracy to transport liquor in violation of National Prohibition Act is a felony.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Prosecution by the United States against Ernest A. Brady and others. Motions to quash indictment and petitions for suppression of evidence were overruled, and defendants bring error. Affirmed.

Thomas D. Slattery, of Cincinnati, Ohio (Maurice L. Galvin, of Cincinnati, Ohio, and Wm. A. Burkamp, of Newport, Ky., on the brief), for plaintiffs in error.

---

Sawyer A. Smith, U. S. Atty., of Covington, Ky. (John E. Shepard and Rodney G. Bryson, Asst. U. S. Attys., both of Covington, Ky., on the brief), for the United States.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. In two of four counts defendants were charged with conspiracy, and in the other two with the substantive crimes, first of transporting, and second of possessing unlawfully intoxicating liquors. Motions to quash the indictment were overruled, and petitions for the suppression of evidence alleged to have been obtained through unlawful arrests and seizures, and for the return of the property seized, were denied. On the trial the evidence alleged to have been so obtained was admitted over objection and exception. Defendants were convicted and sentenced on all counts.

[1] It is well settled in the federal courts that papers and property obtained from a defendant in violation of his constitutional rights under the Fourth Amendment cannot be used in evidence against him, if application for their return is seasonably made. Amos v. U. S., 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654.

[2] It is unnecessary in the instant case to consider whether or not, in the absence of a prior arrest, the search and seizure here made were unreasonable (see Hilsinger v. U. S., 2 F. (2d) ——, decided by this court June 10, 1924; Milam v. U. S. [C. C. A.] 296 Fed. 629; Jones v. U. S. [C. C. A.] 296 Fed. 632), for here the seizure followed the arrest, and the right to search and seize for the purpose of discovering the fruits, instruments or evidence of crime is incident to a lawful arrest (Weeks v. U. S., 232 U. S. 383, 392, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Agnello v. U. S., 290 Fed. 671, 684 [C. C. A. 2]; Donegan v. U. S., 287 Fed. 641, 649 [C. C. A. 2]; Baron v. U. S. [C. C. A.] 286 Fed. 822, 824; Browne v. U. S. [C. C. A.] 290 Fed. 870, 875).

[3] Was, then, the arrest of these defendants lawful? Let us examine the circumstances thereof as portrayed in the record. On October 12, 1922, a man who had been working with the prohibition agents, and who lived near the Burk Springs distillery, informed the district general prohibition agent that this distillery was to be robbed; that he was on the inside and was supposed to see that the road was clear. On the 14th this agent was further told that a load had been taken out of the distillery on the preceding night, and that the men would be back again in a day or two for another load; that the whisky would be taken through Perryville, on the way to Cincinnati or some point north, and that a Marmon car and a Reo speed wagon would be used. Arrangements were thereupon made that the informer should telegraph on learning just when the next load would be taken out. On the 17th the agent received a telegram, advising him in effect that a load was to be taken out that night. With four federal prohibition agents as his assistants, and a chauffeur, he went to a point on the public highway near Perryville, known as the "Steel Bridge," arriving there in the night about 11:30. This bridge was along the best route to Cincinnati from the distillery, about 25 miles away. After about 45 minutes the officers

blocked the bridge with the machine and stopped the traffic; in the meantime a Marmon car, which was suspected of being involved in the crime, was allowed to pass, going toward the distillery, as the prohibition agents believed that it would return shortly with the liquor. Indeed, in order to throw the occupants of the Marmon off the scent, the officers drove their car a distance down the highway and later returned to the bridge. After the blockade, and before defendants' car came along, several others were stopped. The driver of one of them said he was a preacher; he was allowed to proceed without search. One, who said he was a physician, was both stopped and searched, but no liquor was found; he was then allowed to proceed. Thereupon a Ford and a Buick passed; in each moonshine was found. Then a Studebaker was allowed to go on, no liquor apparently being found in it. Early in the morning a Packard drove up. It did not attempt to go onto the bridge, but, when its occupants saw the flashlight of the prohibition agents, a shot was fired from the machine, the gas put on, and the car run up a little road that ended in a field, where the car was abandoned; the occupants got away. The officers, searching the abandoned car, found 21 ten-gallon cases of red whisky.

Believing that the rest of the whisky which they had been advised would be stolen that night would soon come along, they put two cars on the bridge and also blocked off the road that the Packard had taken. About a half hour later the prohibition agents observed approaching the bridge a Reo speed wagon, a covered truck, followed closely by a Marmon car, which the officers took to be the car they had seen earlier in the night. They appeared to be "coming right along down together; it looked like one was pulling the other." When both machines were on the bridge, they were stopped at the same time; the Marmon was 20 feet behind the truck, but they "were together, coming right along together"; their occupants were arrested and the cars were searched. Defendant Morton was the driver of the Reo truck; defendants Brady and Howard were in the front seat of the Marmon car. In the Reo truck 20 ten-gallon cans of red whisky were found. In the Marmon no whisky was found, but two cans filled with gasoline, exactly like the cans taken from the Reo truck and the Packard car, were in this car. The defendants Brady and Howard were heavily armed, and ammunition was found in the Marmon car.

No other cars passed during the further time—about an hour—that they remained there. After the arrest, the agents went to the distillery, found cans similar to those in the cars, and further found that whisky had been taken out of about 40 barrels. It is admitted that arrests were made and the searches and seizures consummated without any warrant. We may assume for the purposes of this case that the prohibition agents are not marshals or deputy marshals of the United States and are without authority as peace officers to make arrests (Agnello v. U. S., supra); that they have only such authority in the premises as is specifically provided by statute (see National Prohibition Act, title 2, §§ 26 and 28 [Comp. St. Ann. Supp. 1923, §§ 10138½mm, 10138½o]), or as is possessed by any private person. Inasmuch as, for the reasons hereinafter stated, the defendants were subject to arrest and search by any private person without a warrant, it is unnecessary

to consider whether such an arrest and search could be sustained under section 26 of title 2 of that National Prohibition Act, authorizing the Commissioner of Internal Revenue, his assistants, inspectors, or any officers of the law who "shall *discover* any person in the act of transporting in violation of law, intoxicating liquors in any wagon, buggy, automobile, water or air craft or other vehicle," to arrest the persons and to seize the liquor forthwith without a warrant.

[4] It is well established that the right of arrest without warrant by a private person, in the absence of restrictive statutes, goes at least this far: That if a felony has in fact been committed, he may so arrest one who is committing it in his presence, or whom he has reasonable ground to suspect of having committed it. An unlawful taking of whisky from a bonded distillery is a felony under section 3268 of the United States Revised Statutes (Comp. St. § 6006). A conspiracy to commit an offense against the United States, as transporting liquor in violation of the National Prohibition Act, is a felony under section 37 of the Criminal Code (Comp. St. § 10201).

In the circumstances of this case, as hereinabove set forth, a private person would have been justified in arresting the defendants, without a warrant and in taking from them the evidences of their crime, either on the ground that a felony had been committed by the unlawful taking of the whisky from the bonded distillery and that there was a reasonable basis for the belief that the defendants were guilty of this felony, or on the ground that the conspiracy to transport the liquor in violation of law was being carried out in the very view of the arresting parties and that the arrest was clearly calculated to prevent the successful consummation of the object of the conspiracy.

There was abundant evidence of the conspiracy; the Marmon car had gone up toward and returned from the direction of the distillery; it followed the Reo truck so closely that they came on the bridge together; both occupants were heavily armed and carried additional ammunition, though they had nothing, unless it were the whisky in the truck, to guard and to protect. The agent had been advised that a number of men were concerned in the scheme to take and transport the whisky from the distillery, and that they were using a Marmon car and a Reo speed wagon.

We need not determine the general legality or illegality of blockading the bridge at midnight, or the right of the physician or the preacher to complain that they had been stopped; if, as against the state or as against some individuals, a wrong, civil or criminal, has been done by zealous or overzealous prohibition agents, these defendants cannot seek, and indeed are not seeking, to redress it; in the circumstances narrated their arrest and the seizure of the property were legal.

The evidence thus obtained was admissible for all purposes; the counts on the substantive offenses of possession and transportation, as well as those of conspiracy, were thereby abundantly proven. The exact likeness of the whisky cans found in the Packard car and Reo truck and the gasoline cans in the Marmon car was but an additional link in the chain of evidence that the three men were associated in the illegal transactions charged in the indictment.

Affirmed.