**UNITED STATES v. GOWEN et al.**

No. 285.

Circuit Court of Appeals, Second Circuit.

April 14, 1930.

ed States, 275 U. S. 192, 194, 48 S. Ct. 74, 72 L. Ed. 231. The minor premise is that the seizure of the papers and documents in suit violated their rights under the Fourth Amendment. This the United States attorney denies, asserting that the seizure was privileged as an incident to a lawful arrest of Gowen and Bartels. The legality of their arrest is therefore the first subject for consideration.

It is challenged by the appellants upon the theory that an arresting officer who purports to act under a warrant may not justify on any other ground. It may be doubted whether an officer who makes no return of service of a warrant can be said to act under it; and whether the argument does not come to this, that an officer who tells the accused that he acts under a warrant can only justify by showing a legal warrant. But, if it be assumed that O'Brien purported to act under the warrant, the contention that he may not otherwise justify cannot be sustained. As was said by the Supreme Court in Stallings v. Splain, 253 U. S. 339, 342, 40 S. Ct. 537, 64 L. Ed. 940, the possession of an insufficient warrant does not render illegal an arrest which could lawfully be made without it. In numerous cases the insufficiency of search warrants has been held immaterial when the search and seizure might be otherwise justified. Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; Vachina v. United States, 283 F. 35, 36 (C. C. A. 9); Fryar v. United States, 3 F.(2d) 598 (C. C. A. 6); Billingsley v. United States (C. C. A.) 16 F.(2d) 754, 756; Lee Kwong Nom v. United States, 20 F.(2d) 470, 472 (C. C. A. 2); State v. District Court, 72 Mont. 77, 231 P. 1107. Cf. Murby v. United States, 293 F. 849, 852 (C. C. A. 1). These search warrant cases the appellants attempt to distinguish upon the ground that in them the arresting officers had evidence of crime committed in their presence, rather than probable cause to believe that the person arrested had previously committed a felony. The logic of the attempted distinction is not apparent, and we regard these cases as authorities against the appellants' first contention. See, also, Salisbury v. Commonwealth, 79 Ky. 425, involving an invalid warrant of arrest. Cases where a warrant is necessary to gain lawful entry to the premises are distinguishable and have no application to the present situation.

The legality of the arrest is next attacked upon the ground that O'Brien had no authority to arrest without warrant, because (1)

J. Edward Lumbard, Jr., of New York City (Seymour B. Quel, of New York City, of counsel), for appellants.

Charles H. Tuttle, U. S. Atty., of New York City (Robert B. Watts, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The major premise of the appellants' argument is that the Fifth Amendment protects every person against incrimination by the use of evidence obtained through unreasonable search or seizure in violation of rights secured to him under the Fourth Amendment. This is unassailable. Agnello v. United States, 269 U. S. 20, 34, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Marron v. Unit-

a prohibition agent is not a peace officer; (2) the Treasury Regulations under which prohibition agents act do not sanction it unless crime is committed in the agent's presence; and (3) if the agent relies only upon the right of a private individual to arrest without warrant, he did not have probable cause to believe that Gowen and Bartels had committed the felony for which they were arrested. We pass at once to the third branch of the argument, for, if this is decided adversely to the appellants, it will be unnecessary to consider the other two.

The New York Code of Criminal Procedure provides:

"§ 183. A private person may arrest another: * * *

"2. When the person arrested has committed a felony, although not in his presence."

■ This in effect is declaratory of the common law, which concededly permits a peace officer or a private individual to arrest without warrant where a felony has in fact been committed by the person arrested and the person making the arrest had probable cause for so believing. See Carroll v. United States, 267 U. S. 132, 161, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Brady v. United States, 300 F. 540 (C. C. A. 6); Bishop, New Crim. Proc. (2d Ed.) § 181. Braidwood's affidavit sets forth ample facts, none of which is denied, to show that Gowen and Bartels had conspired to violate the National Prohibition Act. We do not understand appellants to deny that Braidwood would have had sufficient reason to believe them guilty of a felony to justify an arrest by him without a warrant. The objection is that O'Brien's belief was based, not upon personal knowledge, but upon information obtained from his superior officer, Calhoun, who in turn had received from Braidwood most of the information he imparted to O'Brien. It is urged that the "probable cause" which will justify arrest of a felon must be founded upon more than unsworn hearsay. But neither in reason nor upon the authorities is the rule so limited; rather, the test is whether the belief is reasonable. In Carroll v. United States, supra, the court said (page 161 of 267 U. S., 45 S. Ct. 280, 288):

"The necessity for probable cause in justifying seizures on land or sea, in making arrests without warrant for past felonies, and in malicious prosecution and false imprisonment cases has led to frequent definition of the phrase. In Stacey v. Emery, 97

U. S. 642, 645, 24 L. Ed. 1035, a suit for damages for seizure by a collector, this court defined probable cause as follows:

"'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.'"

■ Instances where the arrest has been sustained although the arresting officer acted on information obtained from others, rather than on personal knowledge, may be found in Brady v. United States, supra; King v. United States, 1 F.(2d) 931 (C. C. A. 9); White v. United States (C. C. A.) 18 F.(2d) 870. Measured by the test above stated, we think O'Brien was justified. He had received his information from his superior officer, whose own investigations had corroborated the facts reported by Investigator Braidwood. Calhoun, the superior officer, had sworn to a complaint charging Gowen and Bartels with the crime. It is true that that complaint was legally insufficient, but it may nevertheless be considered as affording O'Brien an additional reason for giving credence to the detailed facts Calhoun had stated to him concerning the conspiracy. The source of his information and the detailed character of it were such as to justify a cautious and prudent man in reaching the same conclusion as did O'Brien. It is urged that to sanction arrest upon information of this character and to permit a search as incidental to the arrest makes it easy to fabricate a justification which the arresting officer did not have when he made the arrest. This objection goes to the credibility of the officer's testimony, not to his right to make the arrest. Knowledge gained from the arrest or from a seizure incidental thereto cannot be used to support a finding of probable cause. See United States v. Maresca, 266 F. 713, 725 (D. C. S. D. N. Y.). But nothing is shown to raise doubt that O'Brien had received before the arrests the information which he says he had. We conclude that the arrests were legal.

■ Granting this, it is urged that the search and seizure were illegal. In considering this argument, it will be convenient to differentiate between the papers found on the persons of Gowen and Bartels, and those found in the search of the safe, desks, and offices. It is not, and cannot be, denied that papers taken upon the person of the accused in connection with his lawful arrest may be retained for use upon his trial, if relevant thereto. Agnello v. United States, 269 U. S. 20, 30, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R.

409; United States v. Kirschenblatt (C. C. A. 2), 16 F.(2d) 202, 203, 51 A. L. R. 416. Therefore, with respect to the papers found upon the individual appellants, the order denying their return was clearly right.

█ The privilege of search incidental to a lawful arrest is not limited to search of the person; it extends to the premises where the arrest was made, and permits seizure of property there located and within the control of the accused, if it be contraband, as in Carroll v. United States, supra, or "things used to carry on the criminal enterprise," as in Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 77, 72 L. Ed. 231. In the latter case, Marron and others were charged with conspiracy to maintain a nuisance in violation of the Prohibition Act. Having been convicted, Marron challenged the judgment on the ground of error in admitting evidence consisting of a ledger and certain bills seized by prohibition agents upon the premises where a fellow conspirator, Birdsall, had been arrested. The ledger showed "inventories of liquors, receipts, expenses, including gifts to police officers, and other things relating to the business." The bills were for gas, electric light, water, and telephone service furnished on the premises. At the trial there was evidence that Marron made most of the entries in the ledger, and that he was concerned as proprietor or partner in carrying on the business of selling intoxicating liquors. In affirming the conviction, the court said (page 198 of 275 U. S., 48 S. Ct. 74, 77):

"When arrested, Birdsall was actually engaged in a conspiracy to maintain, and was actually in charge of, the premises where intoxicating liquors were being unlawfully sold. Every such place is by the National Prohibition Act declared to be a common nuisance, the maintenance of which is punishable by fine, imprisonment or both. * * * The officers were authorized to arrest for crime being committed in their presence, and they lawfully arrested Birdsall. They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. Agnello v. United States, supra, 30 of 269 U. S., 46 S. Ct. 4; Carroll v. United States, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Weeks v. United States, supra, 232 U. S. 392 [34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177]. The closet in which liquor and the ledger were found was used as a part of the saloon. And, if the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none the less a part of the outfit or equipment actually used to commit the offense. And, while it was not on Birdsall's person at the time of his arrest, it was in his immediate possession and control. The authority of officers to search and seize the things by which the nuisance was being maintained extended to all parts of the premises used for the unlawful purpose. Cf. Sayers v. United States (C. C. A.) 2 F.(2d) 146; Kirvin v. United States [(C. C. A.) 5 F.(2d) 282], supra; United States v. Kirschenblatt, supra. The bills for gas, electric light, water, and telephone services disclosed items of expense; they were convenient, if not in fact necessary, for the keeping of the accounts; and, as they were so closely related to the business, it is not unreasonable to consider them as used to carry it on. It follows that the ledger and bills were lawfully seized as an incident of the arrest."

█ This case the appellants attempt to distinguish upon the ground that the papers and ledger there seized were instruments of the crime of maintaining a nuisance, while here the papers and documents are merely incriminatory evidence of the crime of conspiracy. We do not think the distinction can be substantiated. In the Marron Case, the crime charged was conspiracy to maintain a nuisance. Calhoun's complaint charged the identical crime. O'Brien's affidavit says that he placed Gowen and Bartels under arrest for "conspiring to violate the laws of the United States pertaining to intoxicating liquors." He does not expressly mention nuisance, but the facts which he says he relied on—those stated in Braidwood's affidavit—show a conspiracy to maintain a nuisance, and that a nuisance was maintained. Liquor was kept on the premises, not usually in large quantities, it is true, but rather as samples to show to purchasers. Orders were there taken and paid for, and sometimes deliveries were made at the office, though more often Braidwood obtained delivery at the "machine shop." It is true that the Marron premises were used as a saloon for retailing and drinking liquors, and the court refers to the officers' authority "to search and seize things by which the nuisance was being maintained." But we cannot doubt that it is any less the maintaining of a nuisance within the statutory definition (27 USCA § 33) to conduct a wholesaling liquor business, even though only a small part of the liquor sold is kept on the premises or there delivered. The papers seized include names and addresses of customers with amounts outstanding as pay-

able for liquors, detailed inventories of liquors received, sold, and delivered, individual receipts for liquor deliveries, letters and other correspondence having to do with the purchase, sale, and delivery of liquors. These all come within the classification, applied in the Marron Case to the bills, of things "so closely related to the business, it is not unreasonable to consider them as used to carry it on." Technically the papers may belong to the corporation rather than to its officers who were arrested; but the corporation was merely the cloak under which the individuals carried on their illegal business, and it, as well as they, was guilty of the conspiracy. No distinction can be based on the fact that Marron was a partner, while Gowen and Bartels were corporate officers. We regard the Marron Case as controlling and as sustaining the seizure in suit. In United States v. Kirschenblatt, supra, this court laid down a more limited doctrine, but we do not think it can stand after the Marron Decision.

Having disposed of the merits of the controversy, it might seem unnecessary to say more; but, in the interest of orderly procedure in cases of this type, which are becoming so common, we shall discuss briefly the theory of proceedings for the recovery of property alleged to be illegally seized.

 First, as to the jurisdiction of the District Court to entertain a summary motion of this nature as against the United States attorney. Jurisdiction to give summary relief against an officer of the court is beyond doubt. See Cogen v. United States, 278 U. S. 221, 225, 49 S. Ct. 118, 73 L. Ed. 275; Matter of Behrens (C. C. A. 2, opinion March 3, 1930), 39 F.(2d) 561. Nor do we question that a motion to prevent use by the United States attorney of documents incompetent as evidence because illegally obtained by another officer of the government (Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182; 64 L. Ed. 319, 24 A. L. R. 1426), may be made before there is any indictment or information pending against the maker of such motion. Perlman v. United States, 247 U. S. 7, 38 S. Ct. 417, 62 L. Ed. 950; Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159; Cogen v. United States, supra. Such officer of the court may be brought in by service of an order to show cause. As a matter of formal procedure, such order should be directed to him, not, as in the case at bar, to "the United States." But this informality may be ignored, and we have treated the rule to show cause as if directed to

the United States attorney and also to Agent Calhoun, who is alleged to have possession of the papers. Since the seizure is held valid, the appellants are entitled to no relief against the United States attorney, and the order denying their motion as against him will be affirmed.

 The District Court's jurisdiction to control the disposition of property illegally held by one not an officer of the court is a less simple problem. In Matter of Behrens, supra, we held that, when forfeitable property is seized and held by prohibition officers, the legality of their seizure was to be determined in the forfeiture proceedings, not on summary motion for an order directing return of the property. Where, as here, the property consists of papers held for evidence not for forfeiture, the legality of the seizure cannot be so determined. On general principles it would seem that replevin, unless some statute forbids it, or a bill in equity, since temporary relief is sought against a threatened use of information contained in the papers, would be the appropriate remedy. See United States v. Casino, 286 F. 976, 978 (D. C. S. D. N. Y.); Sims v. Stuart, 291 F. 707, 709 (D. C. S. D. N. Y); Applybe v. United States, 32 F.(2d) 873 (C. C. A. 9), rehearing denied (C. C. A.) 33 F.(2d) 897. We may assume, without the necessity of so deciding in the present case, that section 934, Rev. St. (28 USCA § 747), forbids replevin, and that a bill in equity will lie to recover possession of papers illegally held by prohibition officers. See Sims v. Stuart, supra; 27 US CA § 45; Maryland v. Soper, 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449. Apparently the underlying assumption of the appellants has been that an order directing the United States to show cause if served upon the district attorney will bring into court any representative of the government in any of its divers branches. This is wholly erroneous. See Weinstein v. Attorney General, 271 F. 673, 675 (C. C. A. 2); Applybe v. United States, supra. We are not informed of any statutory provision which gives the District Court summary jurisdiction to direct the return of papers illegally held by prohibition officers who have not acted under process of the court. Consequently so far as the appellants' motion sought relief against Agent Calhoun, the order to show cause should have been discharged.

The order appealed from must be modified accordingly. With respect to the relief asked against the United States attorney, the order is affirmed; in respect to all other

relief asked, the order is reversed and remanded with directions to discharge the rule to show cause.