**DORSEY v. UNITED STATES.**

No. 12294.

United States Court of Appeals
Fifth Circuit.

June 3, 1949.

Rehearing Denied Sept. 1, 1949.

Joe Creel, Miami, Fla., Meinhard H. Myerson, Jacksonville, Fla., Dan Chappell, Bart A. Riley, A. C. Dressler, Miami, Fla., for appellant.

Herbert S. Phillips, U. S. Atty., Tampa, Fla., Fred Botts, Asst. U. S. Atty., Miami, Fla., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Tharp, Howard, Dorsey and Webb were indicted in Count 1 for a conspiracy to violate General Ration Order No. 8 and Third Revised Ration Order No. 3 made under the Second War Powers Act, 50 U. S.C.A.Appendix, § 631 et seq., with respect to rationed sugar; and in Counts 2 and 3 Tharp was charged with substantive offenses with reference to rationed sugar documents; and in Counts 4 and 5 Howard was charged with similar substantive offenses. Howard pleaded guilty to Counts 4 and 5 and was not tried on Count 1. The other defendants were convicted and sentenced on Count 1 only, and appealed. Webb was put on probation and has not prosecuted his appeal. Tharp has died and the prosecution has abated as to him. Dorsey's conviction under Count 1 is now involved. The points argued for him are: 1. That Count 1 should have been dismissed on motion; 2. That several conspiracies were proved instead of the one charged and acquittal should have been directed on motion; 3. That Dorsey was illegally arrested and searched and the evidence so obtained should have been suppressed; 4. The judge misquoted evidence to the jury; and 5. There was other judicial unfairness.

1. The first count, six pages long, is verbose and difficult to follow, but charges a conspiracy lasting from June 1, 1945, to Dec. 1, 1946, to violate the Ration Orders above referred to by securing sugar ration checks for payees not entitled to them or the sugar stated in them; by selling and transferring such checks to persons not entitled to the checks or the sugar; by selling and distributing counterfeit sugar stamps and securing sugar thereon in violation of the Second War Powers Act and the regulations made thereunder; by paying money as bribes to Dorsey and by his receiving the money, Dorsey being a person acting for and in behalf of the United States in an official capacity as a Special Agent in Region Four of the Office of Price Administration, with intent to influence his actions and decisions, and with intent on Dorsey's part to have his actions and decisions influenced thereby, and to pay him large sums to do or omit to do official acts such as securing official documents, making official investigations, and covering up offenses and irregularities performed by the other conspirators in the acquisition and use of sugar and sugar documents contrary to the duly promulgated regulations for the control of sugar, a rationed article. Twenty-two overt acts are set forth.

The count is not multifarious. It charges a general plan to subvert the Ration Orders and to aid and cover the unlawful operations by including in it a Special Agent of the Office of Price Administration. It does not allege that the violations of the Orders were to be "wilfully" done, or that Dorsey's official capacity was known, as would be necessary in charging substantive offenses. But in charging that the plan was to violate the Orders wilfulness is implicit, and a plan to pay Dorsey to violate his official duty implies that they all knew his official capacity. It is well settled that in a charge of. conspiracy to commit offenses the conspiracy is the gist of the offense and that the offenses to be committed need not be alleged with the fullness that would be necessary in prosecuting for the commission of such offenses. Thornton v. United States, 271 U.S. 414, 423, 46 S.Ct. 585, 70 L.Ed. 1013; Williamson v. United States, 207 U.S. 425, 449, 28 S.Ct. 163, 52 L.Ed. 278; Hill v. United States, 4 Cir., 42 F.2d 812. In ruling on

the motion to dismiss the court held that such wilfulness and knowledge would have to appear in proof, but that the conspiracy charge was sufficiently made. There was no error.

■ 2. The evidence tended to prove that the defendants other than Dorsey had been operating for some time, but that Dorsey did not enter the picture till October, 1946. His joining the conspiracy at that time did not make a new and independent conspiracy. There was certainly no fatal variance between what was alleged and what was proved. There was no ground for acquittal in this situation.

■ 3. Tharp had been and Dorsey still was connected with the Office of Price Administration, and knew each other well. Howard was a large user of sugar and bought the contraband documents. He was detected and implicated Tharp. Tharp was arrested in Howard's office by government investigators, who were not arresting officers, in the act of dealing with Howard and was searched and questioned, and he made a sworn written confession charging Dorsey with being a party to the conspiracy, and detailing Dorsey's dealings. He agreed with the investigators to try to trap Dorsey the next morning at Tharp's home by giving him two $3,000 checks as having been paid over by Howard for sugar checks furnished by Dorsey. Dorsey met the appointment at Tharp's home, the investigators being concealed, and there is some conflict as to what occurred, that most unfavorable to Dorsey being that Tharp and Dorsey had some conversation, and then Tharp asked Dorsey if he had picked up the two checks, and Dorsey asked which ones, and Tharp said it was the checks he gave Howard, O. P. A. checks, 50,000# checks. Dorsey said he had checked on it, but it had not come to the Columbia Bank and he did not know what was the matter, they had not received a shipment for a month. Tharp then told Dorsey he delivered the checks to Howard yesterday but Howard did not have the money but gave him these two checks ($3,000 each) to hold till he got the money. Tharp then handed Dorsey the checks and he looked at them and handed them back and said, "That is all right. I can get the money later." The investigators then arrested Dorsey, searched him and found a little black memorandum book containing addresses, including Tharp's, and a wallet containing some money and automobile papers. Tharp recanted to a large extent and pleaded not guilty. He and Dorsey moved to suppress the evidence obtained from each by their several arrests. We have no occasion to inquire into the arrest of Tharp, for Dorsey cannot assert Tharp's right of immunity from unreasonable search. As to Dorsey, we have concluded his arrest though without a warrant, and by persons who were not arresting officers, was lawful. There being no special federal statute on the subject, the arrest in Florida for a federal offense is governed by Florida law. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. The law of Florida is the common law, except as modified by statute. Florida Statutes Annotated in Sect. 901.15 provide: "A peace officer may without warrant arrest a person: (1) When the person to be arrested has committed a felony or misdemeanor in his presence. * * * (2) When a felony has in fact been committed, and he has reasonable ground to believe that the person to be arrested has committed it. (3) When he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it. * * *" These provisions are in line with the common law. 4 Am.Jur., Arrest, Secs. 24, 25, 26; 6 C.J.S., Arrest, § 6. The Florida Statutes make no provision about arrests by a private person. The common law authorizes a private person also to arrest for a felony committed in his presence; or if a felony has been committed, and he has probable cause to believe and does believe the person arrested to be guilty. He can justify his not getting a warrant, though he had opportunity, by proving the arrested person was actually guilty. 4 Am.Jur., Arrest, Secs. 35, 36, 37; 6 C.J.S., Arrest, § 8. See also United States v. Gowen, 2 Cir., 40 F.2d 593, and Brady v. United States, 6 Cir., 300 F. 540, 541. We find but one case in the Florida Reports on the lawfulness of an arrest for a felony by a private person,

902

Poole v. State, 129 Fla. 841, 177 So. 195. The right to arrest was there upheld without other discussion than a recital of the circumstances which showed reasonably that the persons arrested had committed or were committing the felony of cow stealing. See as to probable cause, Rogers v. State, 158 Fla. 582, 30 So.2d 625.

■ In the present case, that a crime of conspiracy was in progress the verdict establishes, as does the evidence. The investigators knew that Howard had been detected, as had Tharp, and both had confessed. Howard and Tharp had accused Dorsey, and what Dorsey did and said in the investigators' presence tended to confirm the accusation. They had reasonable ground to believe Dorsey was in the conspiracy. The Di Re case, supra, is relied on by Dorsey, but Dorsey is not in the position of Di Re, whom no one had accused and against whom there was no suspicion till he was searched. Dorsey is in the position of Buttita whom the informer had charged with crime and whose arrest was not contested. Dorsey's arrest being lawful, it was permissible to search him. What was found on him, without detailing it, was of so little importance that it is not likely it influenced the verdict. Dorsey took the stand as a witness, but did not even refer to the occasion of his arrest and what was taken from him by search. There was no error in admitting the evidence.

■ 4. The jury, having retired, returned and asked to have read "the testimony of the witnesses, Mr. Tharp for one." It was further specified by a juror that they wished what Mr. Tharp said when Mr. Dorsey came into his home, and regarding the two checks. The reporter apparently was not at hand, and the judge said he had fairly complete notes on Mr. Tharp's testimony and if there was no objection he would review the testimony from the notes. Counsel for both sides agreed. The judge then undertook to state the testimony, asking that if he was mistaken counsel would correct him, and stating it was for the jury to say what the testimony was. He covered not only what Tharp said, but also what Jett, who made the arrest, testified. There was some discussion with counsel

which resulted in agreement as to a point of difference between Tharp and Jett. There was no objection made to going into Jett's testimony also. There was no error in mentioning it too, and no misquotation was claimed.

5. We find no merit in other complaints about the trial.

■ The verdict was authorized by the evidence. The judgment is

Affirmed.