587 So.2d 1347 (1991)
The STATE of Florida, Appellant,
v.
Enrique SOBRINO, Appellee.
No. 89-2540.
District Court of Appeal of Florida, Third District.
June 11, 1991.
Robert A. Butterworth, Atty. Gen., and Angelica D. Zayas, Asst. Atty. Gen., for appellant.
Carl H. Lida, Miami, for appellee.
Before BARKDULL, COPE and GERSTEN, JJ.
GERSTEN, Judge.
Appellant, the State of Florida, appeals the suppression of evidence seized from appellee, Enrique Sobrino, after he was stopped by a police officer outside the officer's territorial jurisdiction. We affirm.
A City of Medley police officer observed appellee driving out of the parking lot of a business area, where an audible burglar alarm was ringing. The business area was located across a canal, in the City of Hialeah Gardens. The officer followed appellee into Hialeah Gardens where he eventually stopped him. Hialeah Gardens is outside of the officer's territorial jurisdiction.
When the officer stopped appellee, the officer had no knowledge that appellee had committed a crime. While the officer detained appellee, other officers from Hialeah Gardens discovered that a burglary had been committed in that business area.
Upon stopping appellee, the officer discovered vise grips and a set of alarm keys on the front seat of appellee's car. The trial court suppressed this evidence based on the authority of Phoenix v. State, 455 So.2d 1024 (Fla. 1984).
Phoenix v. State, involved an arrest made by police officers outside their jurisdiction. *1348 In Phoenix, the Florida Supreme Court held that an extrajurisdictional arrest could be validated as a "citizen's arrest." The court reasoned that "law enforcement officials, when they are outside their jurisdictions, should not be any less capable ..., nor should they have any greater power ... than private citizens." Phoenix v. State, 455 So.2d at 1025. The standard to be applied to an extrajurisdictional police arrest is the same as a "citizen's arrest":
A private citizen [has a] ... right to arrest a person who commits a felony in his presence, or to arrest a person where a felony has been committed and where the arresting citizen has probable cause to believe, and does believe the person arrested to be guilty. [Emphasis added.]
Phoenix v. State, 455 So.2d at 1025; see also U.S. v. Ible, 630 F.2d 389 (5th Cir.1980).
Thus, the two prong test set out in Phoenix clearly mandates both: (1) probable cause; and, (2) the belief that the person arrested is guilty of a felony. Here it is possible that the officer may have had probable cause, but the record fails to reveal compliance with the second prong, the belief that the person is guilty of a felony.
In this case, it is uncontroverted that the officer did not intend to arrest appellee. Further, the officer did not know that a felony had been committed. Finally, the officer did not believe that appellee had committed a felony. The officer testified that he had stopped appellee "for investigative purposes." The officer also testified that he did not stop appellee to place him under arrest.
The dissent's reliance on McAnnis v. State, 386 So.2d 1230 (Fla. 3d DCA 1980) is misplaced. In that case, a Broward County police officer completed the purchase of drugs in a home in Dade County, while Dade County police officers waited outside. The Broward County officer pulled his weapon to detain the drug dealer and prevent him from escaping. Ultimately, the Dade County officers entered the home and arrested the drug dealer. Clearly, the Broward County officer in McAnnis had probable cause and believed that a person committed a felony. Thus, the detention in McAnnis constituted a proper citizen's arrest.
Succinctly, a police officer has no power to effect a "stop" outside of his territorial jurisdiction unless there exists exigent circumstances, or the officer is on fresh pursuit. See § 901.25, Fla. Stat. (1989); see, e.g., Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA), rev. denied, 392 So.2d 1379 (Fla. 1980).
The powers wielded by police officers are vast, and subject to abuse. Accordingly, such power has been restricted by strict construction, limited exceptions, and harsh remedies for violations of police powers.
Because abuses of police powers diminish our individual and collective civil rights, the penalty for any violation is one of the most serious ... suppression. See Steagald v. U.S., 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). To find otherwise, would result in an unjustified unbridled expansion of police "stop" powers:
Our rejection of [the State's] claim is not due to a lack of appreciation of the difficulty and importance of effective law enforcement, but rather to our firm commitment to "the view of those who wrote the Bill of Rights... ."
Illinois v. Rodriguez, ___ U.S. ___, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (quoting Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)). Unlike the dissent, we find no need to add a citizen's investigative stop to the lexicon of the Fourth Amendment.
Accordingly, the trial court correctly followed the law and properly suppressed the evidence.
Affirmed.
*1349 BARKDULL, J., concurs.
COPE, Judge (dissenting).
I respectfully dissent. The motion to suppress should have been denied.

I.
At 1:50 a.m., an officer of the Medley Police Department was sitting in his police vehicle near a canal which separates the town of Medley from the town of Hialeah Gardens. He heard a burglar alarm begin to ring. The alarm was coming from a deserted business area across the canal in Hialeah Gardens, approximately 150 yards away. The officer observed a vehicle leave a parking lot at a high rate of speed. No other vehicles were in the area. The parking lot had only one entrance and dead-ended into the business building. There was no other vehicle access to the parking lot except the driveway from which the vehicle was exiting.
At the hearing on the motion to suppress, the Medley officer testified:
[Prosecutor]: All right, Officer. The car leaves. What do you do next?
[Officer]: I began to follow it along South River Drive on my side, advising Hialeah Gardens over the radio through our dispatcher and then through their dispatcher of what had just occurred.
[Prosecutor]: And the substance of your conversation was what?
[Officer]: That I had an alarm with a vehicle leaving and that I was pulling out onto, crossing the bridge onto U.S. 27th, going into, trying to keep track of the vehicle and if they would have a unit respond.
(Emphasis added). The Medley officer followed the car on a parallel road, keeping the vehicle in sight at all times. The Medley officer activated his lights, caught the car, and stopped it. At the time of the stop, the Medley officer was within the jurisdiction of Hialeah Gardens.
The Medley officer directed defendant Enrique Sobrino to step out of the car and stand at the rear of his vehicle while waiting for a Hialeah Gardens officer to arrive. The Medley officer looked into the car for weapons and observed a pair of vise-grip pliers and alarm keys on the front seat. The Medley officer did not touch the items, ask the suspect any questions, or conduct any search. A Hialeah Gardens officer arrived one to two minutes after the stop. Meanwhile, a second Hialeah Gardens officer went to the warehouse and radioed that there had in fact been a breakin. Within a few minutes, the second Hialeah Gardens officer came to the place where defendant was stopped. He arrested defendant and charged him with burglary and possession of burglary tools.
Defendant filed a motion to suppress the evidence seized from the car: the pliers and the alarm keys. At the evidentiary hearing on the motion to suppress, the Medley officer testified as just summarized. He also testified:
[Prosecutor]: And you didn't stop him for the purpose of placing him under arrest, did you?
[Officer]: I stopped him to detain him.
[Prosecutor]: You just stopped him for investigative purposes, is that correct?
[Officer]: Yes, sir.
[Prosecutor]: So, you were detaining him strictly to investigate further what might have occurred?
[Officer]: Well 
[Prosecutor]: So that Hialeah Gardens and you were not stopping him to place him under arrest?
[Officer]: No, sir.
The State argued that the Medley officer's stop was a proper citizen's arrest under Phoenix v. State, 455 So.2d 1024 (Fla. 1984). The defense argued that it was an investigative stop, and that there is no such thing as a citizen's investigative stop.
The trial court ruled that the officer did not have probable cause to arrest defendant and granted the motion to suppress the pliers and the alarm keys. The State stipulated that the trial court ruling was *1350 dispositive of the case[1] and this appeal ensued.

II.
The question presented is whether the Medley officer's action was a proper citizen's arrest under Phoenix v. State.[2]Phoenix authorizes an officer to make an out-of jurisdiction arrest under the same circumstances in which a citizen could make a citizen's arrest.
Florida follows the common law rule for citizen's arrest, which was described as follows in Phoenix:
At common law, a private citizen could make an arrest without a warrant in certain specific circumstances:
"A private citizen does have the common law right to arrest a person who commits a felony in his presence, or to arrest a person where a felony has been committed, and where the arresting citizen has probable cause to believe, and does believe, the person arrested to be guilty. Even though there was time to obtain a warrant, a private citizen may make such an arrest and justify his failure to obtain a warrant by proving the person arrested was actually guilty of a felony."
455 So.2d at 1025. (citations omitted).
As argued and decided below, the sole issue was whether the Medley officer had probable cause to believe that defendant had committed a felony. Turning to that issue first, an often-quoted formulation of the test for probable cause is: "Probable cause exists where `the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, 1890 (citation omitted); Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are ... practical... ." Brinegar v. United States, 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890 (1949). "[T]his `means less than evidence which would justify condemnation' or conviction... ." Id. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890 (citation omitted); Cross, 432 So.2d at 782. Thus, "[t]he officer need not actually see the law being violated nor must he satisfy himself beyond any question that a felony has been committed." Russell v. State, 266 So.2d 92, 93 (Fla. 3d DCA), cert. denied, 271 So.2d 140 (Fla. 1972).
In the present case the trial court concluded that there was no probable cause, reasoning that the burglar alarm may have been a false alarm. The court acknowledged that these were suspicious circumstances, but ruled that they did not rise to the level of probable cause.
In so ruling, the trial court erred, for probable cause plainly existed.[3] A burglar alarm went off in a deserted business district at 1:50 a.m. The defendant's car left the parking lot in front of the business at a high rate of speed. The parking lot had only one entrance and dead-ended into the building in question. The vehicle was the only car in the area. The inescapable inference was that the driver of the car had set off the burglar alarm by attempting to enter without authorization and was leaving the scene as rapidly as possible. In a very similar case, Cross v. State, cited above, this court found probable cause to exist where an individual left a burglarized *1351 packing house on foot. Under all applicable standards, the Medley officer had probable cause.
Defendant argues, however, that this is counteracted by the officer's statement that he stopped the defendant for investigative purposes. The defendant argues that this is a concession that there was no probable cause. That argument is incorrect.
As a preliminary matter, there is a sound reason why the officer testified that the stop was for investigative purposes, and that he did not intend to place defendant under arrest. The Medley officer knew that he was outside of his geographic jurisdiction and that any attempt to formally arrest defendant would be a useless gesture. He also knew that a Hialeah Gardens officer would arrive momentarily, who would take custody of defendant. It is plain that "investigative purposes" in this context meant only that he would hold defendant at that location until the Hialeah Gardens officer arrived. The Medley officer testified unequivocally that he asked no questions, conducted no search, and undertook no investigative actions pending arrival of the Hialeah Gardens officer. This was, in short, not an investigative stop in the technical sense. Contrary to defendant's position, the officer's testimony cannot fairly be read as a concession that he had no probable cause.[4]
For purposes of discussion, however, let us assume that the officer believed there was no probable cause. It is very well settled that an officer's legal conclusion or personal opinion on the issue of probable cause is of no significance. The Florida Supreme Court has said, "[a]lthough the defendant cites no authority for his position, he seems to assert that the state is bound by the legal conclusion as articulated by the ... [police] officer on cross-examination, and that we should infer from this testimony that the defendant was arrested on information that fell below the standard of probable cause." Routly v. State, 440 So.2d 1257, 1260 (Fla. 1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984). Rejecting that contention, the court found probable cause to exist and said, "[n]or would the legal conclusion of the officer prevent the state from arguing and presenting evidence that probable cause did in fact exist." Id. at 1261 (emphasis added); accord Florida v. Royer, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 242 (1983) (plurality opinion) ("the fact that the officers did not believe there was probable cause and proceeded on a consensual or Terry-stop rationale would not foreclose the State from justifying [defendant's] custody by proving probable cause... ."); Peters v. New York, consolidated with Sibron v. New York, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904-05, 20 L.Ed.2d 917 (1968) (police officer's halting of Peters on the basis of a reasonable suspicion of criminal activity under New York's stop and frisk law did not preclude finding of probable cause to arrest, thus validating search as being incident to a lawful arrest); McAnnis v. State, 386 So.2d 1230 (Fla. 3d DCA 1980) ("`the fact that the police did not intend to make a formal arrest or did not think that their actions constituted an arrest is irrelevant[.]'"). Id. at 1232 (citation omitted).[5]See also Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide *1352 the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). See generally 1 W. LaFave, Search & Seizure § 3.2(b) (2d ed. 1987).
There was probable cause, and the trial court erred by ruling to the contrary.

III.
The majority concedes that the officer may have had probable cause, but goes on to posit a second requirement which must be satisfied in order to have a valid citizen's arrest. This second requirement is said to be "the [officer's] belief that the person arrested is guilty of a felony." Op. at 1347. The majority draws this element from language in Phoenix, and argues that the person making the citizen's arrest must have a subjective belief in the guilt of the person arrested.
I must respectfully disagree with that formulation of the test for a citizen's arrest, and in particular the suggestion that the validity of a citizen's arrest hinges on a subjective belief in the guilt of the person arrested.
It is well settled that Florida, like many other states, follows the common law rule on citizen's arrest. See, e.g., Phoenix, 455 So.2d at 1025; Collins v. State, 143 So.2d 700, 703 (Fla. 2d DCA), cert. denied, 148 So.2d 280 (Fla. 1962). The statements contained in Phoenix therefore cannot be read in isolation but must be analyzed in light of the common law rule in order to resolve the case now before us. Thus the beginning point is an examination of the common law rule.
The commentators agree on the essential elements of a common law citizen's arrest. The Restatement (Second) of Torts has set forth the common law rule in Section 119. Id. & comment d. Where, as here, the crime was not committed in the citizen's presence, a citizen's arrest may be made if the following two conditions are met: [1] "if an act or omission constituting a felony has been committed, and [2] the actor [citizen] reasonably suspects that the other [the arrestee] has committed [such] act or omission... ." Restatement (Second) of Torts, § 119(b) (brackets added).[6]
Thus under element [1], the authorities uniformly agree that a felony must actually have been committed. Id. & comment i. A mistaken belief, even if reasonable, is not enough. Id.
Moving to element [2], the citizen must reasonably suspect that the arrestee committed the felony. This is the probable cause part of the analysis. Under this element, the citizen can be mistaken. All that is required is a reasonable suspicion that the arrestee committed the felony. Id. § 119 & comment j.
Other authorities are in agreement with the outline just stated. Thus, "the common-law rule ... is that a private person may arrest without a warrant in a felony case if the felony has actually been committed and he has reasonable grounds for believing that the person arrested was the one who committed it." 5 Am.Jur.2d Arrest § 36 (footnote omitted; emphasis added); accord 6A C.J.S. Arrest § 14 (1975) ("So at common law ... a private person acting in good faith may lawfully arrest one without a warrant for a felony not *1353 committed in his presence if a felony has actually been committed, and the private person has probable or reasonable cause to believe that the person arrested committed the felony.") (footnotes omitted; emphasis added); 4 W. Blackstone, Commentaries [*]293 ("Upon probable suspicion, also, a private person may arrest the felon or other person so suspected."); 1 J. Stephen, A History of the Criminal Law of England 193 (1883, reprinted 1973) (At common law, "[a]ny person may arrest any person whom he suspects on reasonable grounds to have committed any felony, if a felony has actually been committed.").[7]
Returning to element [2], the authorities just quoted use slightly differing phraseology, ranging from Blackstone's "probable suspicion," to the other commentators' "suspects on reasonable grounds," to "reasonable grounds for believing," and "probable or reasonable cause." These have substantially equivalent meanings and have been distilled in the Restatement under the term "reasonably suspects." Id. § 119(b).
Turning to the immediate question: in order to make a common law citizen's arrest, must the citizen have a subjective belief that the arrestee is guilty of the felony? The Restatement drafters have answered that question in the negative: "In order that the [citizen] may `reasonably suspect' the [arrestee] of having committed ... a felony ... it is not necessary that the actor shall believe that the other is guilty of the felony." Id. comment j (emphasis added). On the contrary, "It is enough that the circumstances which the actor knows or reasonably believes to exist are such as to create a reasonable belief that there is a likelihood that the other has committed the felony. In such case, the public interest in the punishment of a felon requires the other's arrest for the purpose of securing his custody pending investigation." Id. (emphasis added).
There is a practical, as well as historical, reason for the common law rule to be as just stated. The Restatement drafters offer the following example:
Illustration:
2. A sees B and C bending over a dead man, D. B and C each accuse the other of murdering D. A is not sure that either B or C did the killing, but he has a reasonable suspicion that either B or C killed D. A is privileged to arrest either or both.

Id. comment j, illustration 2 (emphasis added). The Restatement drafters explain:
If, to create the privilege, it were necessary that the actor should reasonably believe that the one arrested is guilty of a felony, that is, that there is no substantial chance that the other has not committed it, neither of two men could be lawfully arrested for a crime, except by warrant, although it is clear at the time of the arrest that one of them is guilty and that the guilty one may escape unless both are arrested.
Id. comment j. It bears repeating, as said earlier, that the Restatement expressly undertakes to set forth the common law rule. Id. comment d.
Based on the foregoing it is clear that element [2] of the common law rule does not require subjective belief by the citizen that the arrestee is guilty. The test instead is reasonable suspicion or probable cause based on a reasonable person standard.
The next issue is the proper interpretation of Phoenix in light of the common law rule. The particular question is how to interpret that portion of the Phoenix opinion which indicates that a citizen's arrest is proper "where the arresting citizen has probable cause to believe, and does believe, the person arrested to be guilty." 455 So.2d at 1025, quoting Collins v. State, 143 So.2d 700, 703 (Fla. 2d DCA), cert. denied, 148 So.2d 280 (Fla. 1962).
Both Phoenix and Collins squarely hold that the common law rule is controlling on *1354 matters of citizens' arrest in Florida. The language just quoted is intended to set forth the common law rule, and is not intended to modify the common law. The phrase "and does believe" must therefore be read in light of the common law authorities.
Read against the common law background, the phrase means, in my view, only that the citizen making the arrest must be acting in good faith. The common law rule speaks of probable or reasonable cause or suspicion as the basis for a citizen's arrest. As already set forth, probable cause is a matter of probability, not certainty. Brinegar, 338 U.S. at 175, 69 S.Ct. at 1310-11, 93 L.Ed. at 1890. As the Restatement illustration indicates, probable cause or reasonable suspicion may point to multiple individuals. To the extent that "and does believe" adds anything to the analysis, (a) it can at most signify a requirement to act in good faith, and (b) it cannot, consistently with the common law, modify the probable cause standard into one requiring any higher level of subjective belief.
That the Phoenix language must be interpreted in accordance with the common law rule becomes clear after tracing the history of the language in question. Phoenix quoted a formulation of the common law rule which is found in the second district opinion in Collins v. State, 143 So.2d at 703. Collins in turn drew the "and does believe" phrase from a 1949 federal decision, which stated:
The law of Florida is the common law, except as modified by statute... . The Florida Statutes make no provision about arrests by a private person. The common law authorizes a private person also to arrest for a felony committed in his presence; or if a felony has been committed, and he has probable cause to believe and does believe the person arrested to be guilty. He can justify his not getting a warrant, though he had opportunity, by proving the arrested person was actually guilty. 4 Am.Jur., Arrest, Secs. 35, 36, 37; 6 C.J.S. Arrest, § 8. See also United States v. Gowen, 2 Cir., 40 F.2d 593, and Brady v. United States, 6 Cir., 300 F. 540, 541. We find but one case in the Florida Reports on the lawfulness of an arrest for a felony by a private person, Poole v. State, 129 Fla. 841, 177 So. 195. The right to arrest was there upheld without other discussion than a recital of the circumstances which showed reasonably that the persons arrested had committed or were committing the felony of cow stealing.
Dorsey v. United States, 174 F.2d 899, 901-02 (5th Cir.1949), cert. denied, 338 U.S. 950, 70 S.Ct. 479, 94 L.Ed. 586, 340 U.S. 878, 71 S.Ct. 116, 95 L.Ed. 639 (1950).
It is at once clear that Dorsey merely undertook to set forth the ordinary common law rule of citizen's arrest. The Dorsey court recites that it found no Florida authority on the point, and turned instead to standard reference materials which state the common law rule in customary terms.
The authorities relied on in Dorsey were: 4 Am.Jur., Arrest, §§ 35-37 ("In order, however, to justify a private person in making an arrest for a crime not committed in his presence, he must show: (a) That a felony has been committed; and (b) that he has reasonable cause to suspect the person arrested."); 6 C.J.S., Arrest § 8 (same); United States v. Gowen, 40 F.2d 593, 596 (2d Cir.1930) ("This in effect is declaratory of the common law, which concededly permits a peace officer or a private individual to arrest without warrant where a felony has in fact been committed by the person arrested and the person making the arrest had probable cause for so believing.... [T]he test is whether the belief is reasonable... . `If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.'"; arrest sustained even though arresting officer acted on information obtained from others rather than on personal knowledge) (citations omitted), reversed in part on other grounds sub nom. Go-Bart Importing Co. v. United States, 282 U.S. 344, *1355 51 S.Ct. 153, 75 L.Ed. 374 (1931); Brady v. United States, 300 F. 540, 543 (6th Cir.) ("It is well established that the right of arrest without warrant by a private person, in the absence of restrictive statutes, goes at least this far: That if a felony has in fact been committed, he may so arrest one who is committing it in his presence, or whom he has reasonable ground to suspect of having committed it."; arrest sustained where, inter alia, "there was a reasonable basis for the belief that the defendants were guilty of this felony... ."), cert. denied, 266 U.S. 620, 45 S.Ct. 99, 69 L.Ed. 472 (1924).
A clue to the meaning of "and does believe" may be found in one of the authorities relied on by Dorsey. In 4 Am.Jur. Arrest § 36 it is said:
If a felony has in fact been committed by the person arrested, the arrest may be justified by any person without a warrant, but if an innocent person is arrested on suspicion by a private individual, the person making the arrest must be prepared to prove, in justification, both that a felony had been committed, and that in making the arrest he had probable cause, and that the circumstances under which he acted were such that any reasonable person, acting without passion or prejudice, would have fairly suspected that the person arrested committed or was implicated in the crime.

(Emphasis added). The final phrase suggests the qualification that the private citizen must proceed in good faith.
The upshot is that Dorsey attempted to do no more than set forth the traditional common law rule. The "and does believe" phrase has no antecedent in the customary formulations of the common law rule, but was newly minted in 1949 in Dorsey. The phrase must be read in a way which is consistent with, and not contradictory to, the traditional common law rule.
As there was probable cause, the citizen's arrest in this case was valid.

IV.
Finally, even if it is assumed arguendo that the officer had to have a subjective belief that defendant had committed a felony, that standard is satisfied here. The officer reported "an alarm with vehicle leaving," radioed the Hialeah Gardens police department for assistance, activated his lights, and began pursuit. He halted defendant and waited for the Hialeah Gardens officers to arrive. Even under a subjective belief standard, the citizen's arrest was valid.

V.
The effect of affirmance in this case is to hold that a law enforcement officer has no authority to make a private citizen's arrest, outside the officer's jurisdiction, for a felony if the officer has no subjective belief that the arrested person has committed such felony  even though, as here, (1) such felony has, in fact, been committed, and (2) the officer has probable cause to believe that the arrested person has committed such felony. In my view, the law has never imposed such a subjective belief as an essential element of a private citizen's arrest for a felony, and, in any event, such subjective belief is in essence shown on this record.
The order under review should be reversed.
NOTES
[1] The fact that an arrest is illegal does not, without more, bar prosecution of a defendant. State v. E.T., 560 So.2d 1282 (Fla. 3d DCA 1990).
[2] The State has disclaimed reliance on section 901.25, Florida Statutes (1989).
[3] For purposes of this analysis no consideration is given to the Hialeah Gardens officer's statement over the radio that there had been a breakin. That information came to the Medley officer after he had already stopped the defendant.
[4] Whether there is a citizen's arrest effected by an ordinary citizen, or an out-of-jurisdiction arrest by a law enforcement officer, in either instance the person effecting the detention of the defendant will be very unlikely to announce, "I place you under arrest." The ordinary citizen will not do so because the citizen's objective is to hold the defendant for the arrival of the police. An out-of-jurisdiction officer will not do so because the officer will recognize that he or she is out of the jurisdiction and that the proper course is to await the arrival of the duly constituted authorities in order to formally place the defendant under arrest.
[5] The fourth district followed McAnnis in State v. Phoenix, 428 So.2d 262 (Fla. 4th DCA 1982), approved, Phoenix v. State, 455 So.2d at 1024.
[6] Section 119 provides, in full:

Subject to the rules stated in §§ 127-136, a private person is privileged to arrest another without a warrant for a criminal offense
(a) if the other has committed the felony for which he is arrested, or
(b) if an act or omission constituting a felony has been committed and the actor reasonably suspects that the other has committed such act or omission, or
(c) if the other, in the presence of the actor, is committing a breach of the peace or, having so committed a breach of the peace, he is reasonably believed by the actor to be about to renew it, or
(d) if the other has attempted to commit a felony in the actor's presence, and the arrest is made at once or upon fresh pursuit, or
(e) if the other knowingly causes the actor to believe that facts exist which would create in him a privilege to arrest under the statement in Clauses (a) to (d).
[7] See generally Annot., Information, belief, or suspicion as to commission of felony, as justification for arrest by private person without warrant, 133 A.L.R. 608, 613 (1941); 2 F. Pollock & F. Maitland, The History of English Law 582-83 (2d ed. 1968).